LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE, Plaintiff in Error, v. MRS. MARGIE M. VERTREES, Defendant in Error. —318 S. W. (2d) 559.

Western Section. May 7, 1958.

Certiorari denied by Supreme Court October 3, 1958.

Rehearing on Certiorari denied by Supreme Court December 12, 1958.

Moss & Benton, Jackson, for plaintiff in error.

Hancock & Manhein, Jackson, for defendant in error.

BEJACH, J. This cause involves an appeal by the Life & Casualty Insurance Company from a judgment against it for $10,000, in favor of Mrs. Margie M. Vertrees, who was plaintiff in the lower court. For convenience, the parties will be styled, as in the lower court, plaintiff and defendant, or called by their respective names, the defendant being sometimes referred to as "the Company".

This suit was instituted in the Circuit Court of Madison County by Mrs. Margie M. Vertrees, the widow of George A. Vertrees, deceased. The basis for plaintiff's suit is a receipt issued by the defendant in connection with an application for a $5,000 policy of life insurance with double indemnity provision in the event of accidental death. Plaintiff was designated as the beneficiary in the policy which was to have been issued pursuant to said application and receipt. The application for insurance was signed by George A. Vertrees, Sr., on January 7, 1955. Along with said application, he paid $10.10 in cash, which, as is conceded, was the amount of the first premium due. On the same date, the defendant issued to George A. Vertrees, Sr., a receipt in the words and figures, as follows:

"Received from George A. Vertrees, Sr. the sum of ($10.10) Ten and 10/100 Dollars on account of an application made this date to the Life and Casualty Insurance Company of Tennessee. If this sum is equal to the full first premium on the policy applied for, then if the Company shall be satisfied that on the date of Part A of the application, or on the date of Part B of the application if a medical examination is required, that the risk was acceptable to the Company under its rules, for the plan and amount of insurance applied for at the rate of premium declared paid, then the insurance applied for shall be in force as of the date of Part A of the application if no medical examination is required, or as of the date of Part B of the application if a medical examination is required, but otherwise no insurance shall be in force under the application unless and until a policy has been issued and actually delivered to

the applicant, and the first full premium stipulated in the policy has been received by the Company in cash, all during the lifetime and continued insurability of the applicant. The above sum shall be refunded if the applicant is declined or if a policy is issued other than as applied for and is not accepted by the applicant.

"Dated 1-7-1955 /s/ C. D. Ousley, Agent Jackson, Tenn., District".

Defendant's standard form of application is divided into two parts, Part A and Part B. Part B is not required to be filled out unless a medical examination of the applicant is contemplated. Accordingly, in the instant case, Part A, only, was filled out and signed by George A. Vertrees, Sr., his application being for insurance without medical examination. Said application, signed January 7, 1955, was promptly forwarded by C. D. Ousley, defendant's agent at Jackson, Tennessee, to the home office of the company at Nashville, Tennessee. On January 12, 1955, for some reason not disclosed in the record, it was decided at the home office of defendant that a medical examination of George A. Vertrees, Sr., should be required, and a letter so stating was mailed to the local agent at Jackson, Tennessee, on that date, which letter was not delivered until January 13, 1955. On the same day as this letter, to wit, January 12, 1955, the applicant, George A. Vertrees, Sr., was accidently killed in an automobile accident. In our opinion, the decision of the Company to require a medical examination did not change the A application into a B application and thus fix a different date for the beginning of the applicant's coverage.

Immediately after the death of George A. Vertrees, Sr., the defendant was notified and payment of $10,000 demanded, on the theory that the policy, under the terms of the interim receipt, was in force at the time of his death. The defendant denied liability and plaintiff, as the designated beneficiary, brought suit February 3, 1955.

At the trial in the Circuit Court, proof was offered which tended to show that George A. Vertrees, Sr., was in good health at the time of his application and at the time of his death, and that he would have been an insurable risk. No proof to the contrary was offered by the defendant, and no explanation was offered as to why it had decided to require a medical examination. It is conceded by the defendant that, if the insurance was in force, Vertrees' death would entitle his beneficiary to the benefit of the double indemnity provision. Its defense rests upon the contention that the application was merely an offer to contract for insurance, which offer had not been accepted, and, therefore, that no insurance was in force at the time of his death. On the other hand, plaintiff contends that, pursuant to the provisions of the receipt issued at the time of accepting the application, accompanied by payment of the full amount of the first premium due, the defendant was obligated for interim coverage, which was in force at the time of the applicant's death. She contends that the Company's right to reject the application should be construed as a condition subsequent rather than as a condition precedent; and, consequently, since this right had not been exercised prior to the applicant's death, the insurance provided for in the interim receipt was in force at that time.

The cause was tried in the Circuit Court of Madison County before Hon. Mark A. Walker, Judge, without the intervention of a jury. At the conclusion of the trial, he took the cause under advisement and, on February 25, 1957, filed a written opinion deciding the case in favor of the plaintiff. Pursuant to that opinion, a judgment was entered in favor of the plaintiff for $10,000 and interest thereon at 6% per annum from January 12, 1955, together with the costs of the cause. From the learned trial judge's opinion, we quote:

"No Tennessee authority directly in point seems to be available, but the court believes that the authorities cited announce the principles applicable to the facts of this case.

" 'Where a binding receipt is issued to the applicant with a provision that the insurance be binding from the date of the application or the medical examination if the insurance company is satisfied that the applicant was an insurable risk at that time the general rule is that a contract of preliminary insurance is created with the reserved right in the insurer to determine in good faith the applicant's insurability. Hence, if, at the time of the application or medical examination the insured was an insurable risk, the temporary contract of insurance is in force.' 2 A. L. R. (2d) 986.

"A number of lay witnesses testified that the deceased appeared to be in good health up until the time of his death and there is nothing in the record to show that his health was not good.

"After reviewing the non-medical application and recommending the risk to the Home Office, the defendant's District Office ordered their usual inspection report from an independent agency which report was made directly to the Home Office. The record does not indicate what this report disclosed and there is no evidence as to what were defendant's rules relating to the matter. Thereafter, on January 12, 1955, the Home Office wrote the District Office to arrange for a medical examination of the applicant which, of course, could not be accomplished because the applicant was killed on the same day and before the delivery of the letter to the District Office.

"The Court is of the opinion that the application and receipt gave the applicant coverage from the time of the application subject to the right of the defendant to terminate the agreement if it subsequently concluded that Vertrees was not acceptable."

■ A motion for a new trial was made by defendant, although such motion would not have been necessary as a prerequisite for the appeal, under the provisions of Section 27-303, T. C. A., this cause having been tried in the Circuit Court without the intervention of a jury. At any rate the appeal was perfected, and defendant, as appellant, has filed in this Court eight assignments of error. It will not be necessary to copy these assignments of error into this opinion, nor to discuss them separately, because, as is stated in the brief filed in this Court by able counsel for the defendant:

"Ultimately, the assignments of error present the single question: Whether there was a contract of

interim or temporary insurance with this defendant in force on the life of the deceased applicant at the time of his death, either by express agreement, or by necessary construction in accordance with established principles of insurance law.''

The application on Part A of defendant's standard form, signed by George A. Vertrees, Sr.,—Part B of same not having been executed,—contains the following provision, to wit:

"It is understood and agreed: (1) That the foregoing statements and answers are full, complete and true, and are offered to the Company as a consideration for the insurance applied for;

"(2) That the Company shall incur no liability under the application until it has been received, approved, and the policy issued and delivered, and the full first premium stipulated in the policy has been paid to and accepted by the Company during the lifetime and continued insurability of the applicant, in which case such policy shall take effect on actual delivery of the policy to the applicant, Except That if the applicant pays in cash to the Company on the date of Part A of this application, or on the date of Part B hereof if a medical examination is required, an amount equal to the full first premium on the policy applied for, and if the Company shall be satisfied that on the date of Part A, or on the date of Part B if a medical examination is required, that the applicant was a risk acceptable to it under its rules, for the plan and amount of insurance herein applied for at the rate of premium declared paid, then the insurance applied for shall be in force as of the

date of Part A of this application, if no medical examination is required, or as of the date of Part B hereof if a medical examination is required; but in any event the policy shall be deemed to be in effect from the date of issue as recited on the first page thereof for the purpose of calculation of premium due dates, non-forfeiture values, and maturity, if any.''

■ The above language must, of course, be construed in connection with the language of the receipt which has been quoted in the early part of this opinion. In construing the language used, we must, also, adhere to the well settled principle of construction established in Tennessee, that in case of any doubt or ambiguity, the doubt or ambiguity must be resolved against the insurance company and in favor of the insured or applicant for insurance. This rule of construction is well stated by Mr. Justice Burnett, speaking for the Supreme Court in the recent case of Kentucky Home Mutual Life Ins. Co. v. Rogers, 196 Tenn. 641, 653, 270 S. W. (2d) 188, 192, as follows:

''This principle is that a policy or contract of insurance is to be considered liberally in favor of the insured, and strictly as against the company. As stated more fully, the rule is, that where by reason of ambiguity in the language employed in a contract of insurance, if there is doubt or uncertainty as to its meaning, and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the company, the former will be adopted.''

To the same effect is the case of National Bank of Commerce v. New York Life Ins. Co., 181 Tenn. 299, 181 S. W. (2d) 151, in which case the author of this opinion, then Chancellor of the Chancery Court of Shelby County, was reversed. In that case, the insurance company was held liable under a double indemnity provision where its insured, as a fare paying passenger on a commercial airplane, had been killed in a crash, notwithstanding language in the policy which provided that it "will not apply if the insured's death resulted * * from engaging as a passenger, or otherwise, in submarine or aeronautic operations." In view of these decisions, we think the language used in the application of George A. Vertrees, Sr. and the receipt issued to him, is sufficiently ambiguous to require a construction in favor of plaintiff in the instant case, and to justify affirmance of the judgment of the lower court.

We have found no decision of a Tennessee Court, directly in point, construing the language of the receipt involved in this cause, and none has been pointed out to us in the briefs of either of the parties hereto. Decisions of other jurisdictions have been collected in Stonsz v. Equitable Life Assur. Soc. of United States, 324 Pa. 97, 187 A. 403, 107 A. L. R. 178, and in Leube v. Prudential Ins. Co. of America, 147 Ohio St. 450, 72 N. E. (2d) 76, 2 A. L. R. (2d) 936 et seq. There is also a discussion of cases bearing on the question in 44 Yale Law Journal 1223-1232, a copy of which is filed as an appendix to the brief filed by counsel for plaintiff. There is, however, a Tennessee case tried in the Federal Courts, on which we feel justified in resting the conclusion reached in this opinion. This is the case of Liberty Nat. Life Ins. Co. v. Hamilton, 237 F. (2d) 235, 236, (appealed from the

Eastern District of Tennessee), in which case the opinion for the Sixth Circuit Court of Appeals of the U. S. was written by Chief Judge Simons of that Court. The facts of this case are, in many respects, quite similar to the facts of the case at bar, and the principles there announced are, in our opinion, wholly applicable to and determinative of the questions involved in the instant case. The decisions of some Tennessee cases are considered in this opinion with the conclusion reached that they are not determinative of the facts there involved and that the question decided was, at that time, still an open one in Tennessee. This opinion also considers and applies the cases collected in 107 A. L. R. 178 et seq. and in 2 A. L. R. (2d) 936 et seq. We will quote extensively from the opinion. The facts of this case, taken from the opinion, were, as follows:

"On February 28, 1954, * * * Hamilton paid the initial premium and received from the [insurance company's] agent a 'binding receipt' or 'binder' on the face of which was stated: 'Received from Hamilton fourteen and seventy-five hundredths dollars ($14.75) cash, in connection with this application for insurance, which application bears the same date and number as this receipt.' The application provides: 'If a full premium * * * has been paid at the time of making this application, and declaration of such payment is made therein, the insurance subject to the terms and conditions of the policy applied for and in use by the company at this date and subject to the limitations contained in paragraph 2 shall take effect on the date specified in (a) or (b) below, provided the applicant is on such date in good health and a risk acceptable to the company under its rules, limits

and standards, for the plan and amount applied for, and at the rate of premium declared paid.' ''

Subsection (a) of the application from which the above quotation is taken ''provides that if a medical examination is required under the terms of the application and Part (1) of the application is completed, *'the insurance granted hereunder'* shall take effect on the date of completion of the medical examination. Subsection (b) provides that if a medical examination is not required under the terms of the application and Parts 1 and 2 thereof are completed, the *insurance granted hereunder* shall take effect on the date hereof unless the applicant is notified that a medical examination is required, in which case 'the *insurance granted hereunder'* shall take effect on the date of completion of the medical examination. Section 2 recites: 'In no event shall the issuance of this receipt cause the total liability of the company under this receipt, or any other such receipt, and any other policy or policies on the life of the applicant to exceed $100,000.00.' Section 3 provides that if the insurance applied for is not effective, the company's sole liability shall be the return the premium. There is also a provision regarding nontransferability of the receipt and a recital that the company's agents are barred from giving any other form of receipt for a premium collected at the time of taking the application.

''The reverse side of the 'binding receipt' sets out declarations by the applicant that his statements and answers are true and material, that any policy issued shall constitute the entire contract of insurance and that the company shall not be bound by any

statements or promises made to or by the agent or other persons, unless reduced to writing and submitted to the company at its Home Office and made a part of the contract. It also recites that the insurance applied for shall not be considered in force until a policy shall have been issued, accepted, and the first premium paid during the applicant's good health. The first insurance year shall begin with the date of the policy and the first premium shall carry the proposed insurance only until the next premium paying date named in the policy irrespective of the date of delivery or of premium period. Section 3 of the declaration is a statement of understanding that a medical examination is required if the amount of insurance applied for exceeds $5,000.00 and Section 4 recites that the company shall have sixty days from the date of the receipt within which to consider and act upon the application and that if within such period a policy has not been received or if there has been no notice of approval or rejection, the application shall be deemed to have been declined by the company.

"Hamilton applied for the insurance and paid a premium on February 28, 1954. On March 23rd, he dropped dead suddenly. On April 27th, the insurance company sent a formal rejection of the application addressed to Hamilton although it knew for about a month that he had died. Upon receipt of this rejection, the appellee brought suit on the theory that the issuance of the 'binding receipt' effected a contract of temporary insurance necessitating rejection of the application during the life of the applicant in order to preclude liability and upon the further theory that the rejection was not in good faith.

The appellant defended on the ground that there was no contract in force; and that the application was a mere offer not accepted by the company and that under its terms the insurance coverage would be retroactive to the date of the completion of the medical examination only if on that date the applicant was in good health and a risk acceptable to the company under its rules, limits and standards; and that it acted properly in rejecting the application within the sixty day period it allegedly had under the terms of the application and receipt. The errors complained of at the trial were that the Court erred in refusing to direct a verdict in favor of the insurer at the close of all the evidence; erred in allowing Dr. Armstrong, Hamilton's family physician, to give his opinion that Hamilton was an insurable risk at the time of the application and that the Court erred in refusing to grant special instructions to the jury, requested by the appellant.''

After stating the facts, as quoted above, Judge Simon's opinion continues, as follows:

''The vital issue as it was presented to us by brief and argument is whether or not the 'binding receipt' was a contract for temporary insurance, creating a liability in the event that the applicant died before the application was acted upon. In those cases where liability has been imposed in comparable cases two principles have been relied upon: 1. That where there are conflicting or ambiguous recitals as to the time when the insurance becomes effective, the conflict is resolved against the insuror and 2. That considerations of public policy make it fundamentally

unfair for an insurer to collect a premium while providing no coverage for the period reserved by the insurer to consider and act upon the application.

\* \* \* \* \* \*

"We are, therefore, left in doubt as to what the holdings in Tennessee would be if there were conflicting provisions or ambiguities as to the time when the insurance would become effective.

"[1] The present application indicates that under varying circumstances differing dates might be assumed by an inexperienced applicant to the dates when his coverage begins. Section 1 (a) provides that if a medical examination is required, the insurance shall take effect at the date of its completion; Section 2 provides that, in no event, shall the issuance of a receipt cause the total liability of the company on the life of the applicant to exceed $100,000.-00. Here, is inference that under some circumstances the issuing of the receipt creates a liability, if the policy applied for, alone or with other policies, fails to exceed that amount. There is also the provision in Section 2 of the Declaration that the insurance shall not be considered in force until a policy has been issued by the company and received by the applicant. There is language in the instruments which would indicate to an unsuspecting and untutored applicant that he had interim coverage while the company was giving consideration to his medical history. Repeatedly, the application speaks of '*insurance granted hereunder*' and while the receipt given is not formally designated a 'binding receipt',

it has been so denominated in the briefs and arguments and similar receipts have continually been so designated in adjudicated cases. A 'binding receipt' connotes obligation and when supported by valid consideration suggests a contract.

"[2] The reasoning of Judge Learned Hand, in the Gaunt case, (Gaunt v. John Hancock Mutual Life Insurance Co., 2 Cir., 160 F. (2d) 599—certiorari denied by U. S. Supreme Court, 331 U. S. 849, 67 S. Ct. 1736, 91 L. Ed. 1858) is logical and persuasive. Speaking of an application, he said (160 F. (2d) 601) : '* * * that the application was not to be submitted to underwriters; it was to go to persons utterly unacquainted with the niceties of life insurance, who would read it colloquially. It is the understanding of such persons that counts; and not one in a hundred would suppose that he would be covered * * * only as of the date of approval. * * * A man must indeed read what he signs, and he is charged, if he does not; but insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion.' It must be noted here that Judge Clark's concurrence in the Gaunt case indicates that he would have placed the results squarely upon the inequity in accepting a payment of premium without coverage.

"[3] We do not ignore the provision that approval is conditioned upon the applicant being in good health at the time a risk acceptable to the company under its rules, limits and standards. There was, however, substantial lay and medical evidence

that Hamilton was in good health at the time of his medical examination. While there was conflict, it presented a question of fact for the jury which it was its province alone to answer. We attach no importance to the requirement that the risk be acceptable to the company under its rules, limits and standards where the record fails to show that Hamilton had knowledge of company standards when he signed the application and paid his premium. The Court submitted to the jury the question of whether Hamilton's medical examination had been completed so as to make the coverage effective on that date. A careful reading of the record and the reports of the examining physician indicates that there were no further physical tests they desired to make.

"There is respectable authority for the proposition that where a premium has been paid there is insurance coverage, regardless of other stipulations in the application or receipt. Chestnut v. Security Mut. Life Ins. Co., 208 Mo. App. 130, 232 S. W. 203; Bigalke v. Mutual Life Ins. Co. of Baltimore, Mo. App., 34 S. W. (2d) 1019. These cases are discussed in the 44 Yale Law Journal, 1223, 1299, and that is the purport of Judge Clark's concurring opinion in the Gaunt case.

\* \* \* \* \* \*

"We hold that there was a contract for interim insurance between the decedent and the applicant subject only to a subsequent rejection by the company, if made during the life of Hamilton. There was no such rejection." Liberty National Life Insurance Company v. Hamilton, 237 F. (2d) 235, 237.

■ Most, if not all, of the facts of the Hamilton case from which the above quotation is taken, are so nearly identical with or so completely analogous to the facts of the instant case, that we are constrained to reach the same result as did the U. S. Circuit Court of Appeals for the Sixth Circuit, in that case. For that reason, we have quoted at length from its opinion. In that case, the disputed questions of fact were determined by a jury verdict, whereas in the instant case, the issues of fact, as well as the construction of the language used, were determined by the Circuit Judge, trying the cause without a jury. Under the provisions of Section 27-303, T. C. A., this judgment comes to us with a presumption of its correctness, unless the preponderance of the evidence is otherwise. Certainly, we cannot say, in the instant case, that the evidence preponderates against the trial judge's judgment.

It results that the judgment of the lower court must be affirmed. A judgment will be entered in this Court in favor of the plaintiff, Mrs. Margie M. Vertrees, against the defendant, Life & Casualty Insurance Company of Tennessee, for $10,000, together with interest thereon at the rate of 6% per annum from January 12, 1955, and the costs of this cause, including both those of the Circuit Court and those of the Court of Appeals.

Avery, P. J. (Western Section), and Carney, J., concur.