[Civ. No. 7616.   Fourth Dist.   Dec. 20, 1965.]

ROWENA WERNECKE, Plaintiff and Appellant, v. PA-
CIFIC FIDELITY LIFE INSURANCE COMPANY,
Defendant and Respondent.

Smith, Prante & Biggins and James J. Biggins, Jr., for
Plaintiff and Appellant.

Luce, Forward, Hamilton & Scripps and Marshall L. Fore-
man, Jr., for Defendant and Respondent.

COUGHLIN, J.—The plaintiff, as beneficiary under an in-
terim insurance contract, brought this action against the

defendant insurance company, the insurer, to recover insurance allegedly due on account of the death of her husband, the insured. The insurance contract arose out of the insured's application for insurance and his payment of an amount equal to the first premium, for which a receipt was given him by the selling agent. Plaintiff introduced in evidence the application, the cancelled check evidencing payment of the premium amount, the receipt, and proof of death. She also offered to prove that at the time the application was taken by the selling agent, the latter stated if the premium were paid at that time Mr. Wernecke would be "covered," and "in case he was killed the following day in a freeway accident or some other such mishap there would be coverage for the family"; and that this representation "was a product of a sort of prepared sales approach" used in the insurance business. An objection to the offer of proof was sustained. Without introducing further evidence, plaintiff rested. Thereupon, defendant moved for a nonsuit, which was granted, and judgment was entered accordingly. Plaintiff appealed.

The application for insurance was in two parts marked, respectively, Part "A" and Part "B." Part "A" contained data essential to preparation of the type of policy requested. Part "B" was entitled "DECLARATION IN LIEU OF MEDICAL EXAMINATION," and contained answers to questions respecting the defendant's previous health. Included in the latter were answers indicating that the insured had consulted a Dr. A. Pierangelo for periodic physical examinations which revealed "no problems."

The receipt contained the following: "THIS PAYMENT IS MADE AND RECEIVED SUBJECT TO THE CONDITIONS ON THE OTHER SIDE OF THIS RECEIPT" and on the reverse side thereof contained these pertinent statements:

"THE PAYMENT ACKNOWLEDGED BY THIS RECEIPT IS MADE AND RECEIVED SUBJECT TO THE FOLLOWING CONDITIONS:

"1. a. If the medical examinations, if any, required by the Company are completed; and

b. If the Company at its Home Office is satisfied that, at the time of completing both Part A. and Part B of the application, the Proposed Insured was insurable under the Company's rules for a policy on the plan, in the amount, at the class of risk and otherwise exactly as applied for in Part A of the Application bearing the same number as this receipt; and

    c. If an amount equal to the full first premium for the policy applied for has been paid with the application; then, the insurance will be effective from the date of Part A, the date of Part B, or the date specifically requested in the application, whichever date is the latest, regardless of the death . . . of the Proposed Insured occurring after completion of both parts of the application.

"2. Except as provided under Paragraph 1 above, any policy issued by the Company shall not take effect unless and until the first premium is paid and the policy is delivered during the lifetime and good health of the Proposed Insured.

"3. If the Company declines to issue a policy or issues a policy other than as applied for, which is not accepted, this receipt shall be void, and the payment will be returned upon surrender of this receipt. . . ."

The application and receipt were dated July 17, 1962. The insured died on August 3, 1962, from injuries sustained in an automobile accident.

Defendant relates certain facts in its brief not based upon the evidence presented at the time of trial but upon the declarations filed in connection with its motion for summary judgment, which was denied. It is there stated that the subject application was received at defendant's home office on July 19, 1962; thereupon defendant sent a request for information to the doctor named in the application and received a response from him on August 3, 1962, indicating that another doctor had treated the applicant for an urethral stricture; defendant thereafter continued its investigation, obtaining a report from the latter doctor; subsequently defendant determined that applicant was not insurable under the company's rules for a policy on the plan applied for, and offered to return the premium payment, which was rejected.

In situations such as in the instant case, by the decision in *Ransom* v. *Penn Mutual Life Ins. Co.*, 43 Cal.2d 420 [274 P.2d 633], California has aligned itself with those jurisdictions holding, in effect, that where an applicant for life insurance pays a prescribed premium, and the writings evidencing the transaction state that the insurance applied for is effective from date of application upon payment of the premium and company satisfaction of insurability, it will be deemed the parties intended the insurance to be effective forthwith, subject to termination upon notice from the company that the

applicant is not insurable. In *Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43 Cal.2d 420, 423-425, the court predicated its decision, in part, upon the conclusion that the premium having been paid for insurance protection, and the writings not clearly expressing an intent that the insurance not be effective forthwith, the provision that it should be effective as of date of application ''if'' or ''provided'' the company was satisfied that applicant was insurable is considered a condition subsequent rather than precedent to the existence of insurance. In reaching this conclusion, as stated in *Metropolitan Life Ins. Co.* v. *Grant,* 268 F.2d 307, 309, the court ''did not approach the problem as one dealing with the fine niceties of terminology.'' Instead, it would appear that the court activated the rationale later expressed in *Stevens* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862, 868 [27 Cal.Rptr. 172, 377 P.2d 284], where it held that as to certain insurance transactions the coverage obtained thereby is that which the ordinary layman, acting in the ordinary course of business, reasonably may expect by virtue of that transaction, and the insurance afforded by his contract will be determined accordingly unless it is made clear to him that the coverage provided by the particular contract does not conform to what the ordinary layman might reasonably expect under the circumstances. Any ambiguity in the writings respecting the forthwith effectiveness of the insurance deprives the transaction of the clarity required by the rule.

To the ordinary layman, payment of an insurance premium constitutes payment for insurance protection, and when paid under circumstances such as in the instant case presupposes immediate commencement of protection although subject to termination by the insurance company in the event it is not satisfied with his insurability. (*Gaunt* v. *John Hancock Mutual Life Ins. Co.,* 160 F.2d 599, 601-602.) The provisions of the subject receipt, authored by the insurance company, support contradictory implications; on the one hand permit the company to apply the cash payment to a premium period commencing with the date of application, if it approves issuance of the policy, because the applicant is insured during this time; and on the other hand permit the company, by ultimate non-approval, to deny existence of insurance during the same period. Either the company has insured the applicant during the interim period or it has not insured him during that time. In any event, the language used does not foreclose the implication by the ordinary layman that upon payment of the

premium requested he is insured until the company advises him it is not satisfied he is insurable under the plan selected.

The receipt in the instant case is strikingly similar to those considered in *Brunt* v. *Occidental Life Ins. Co.,* 223 Cal. App.2d 179, 181, 183-186 [35 Cal.Rptr. 492]; *Metropolitan Life Ins. Co.* v. *Grant, supra,* 268 F.2d 307, 308-310, and *Gaunt* v. *John Hancock Mutual Life Ins. Co., supra,* 160 F.2d 599, 601, which held the insurance was effective upon payment of the premium. (See also *Life & Casualty Ins. Co.* v. *Vertrees,* 44 Tenn.App. 672 [318 S.W.2d 559, 560].)

In the instant case, Part "B" of the application indicated the insurance was available without medical examination. On the face thereof nothing appeared to indicate that applicant was not insurable because of any physical disability, nor that an investigation would be made concerning such. In light of these circumstances, the applicant, as an ordinary layman, was justified in assuming that the provision in the receipt respecting satisfaction of the insurance company concerning his insurability was a mere formality. In this regard, it should be noted, there is an inherent uncertainty in the provision that the company be satisfied the applicant "was insurable under the Company's rules," which is meaningless to the applicant unless he knows the "rules" that will govern the company's determination. That such a provision does not meet the clarity of expression required in insurance transactions appears from the declaration in section 10113 of the Insurance Code that nothing shall be incorporated in a policy of life insurance "by reference to any . . . rules . . . of either of the parties thereto . . . unless the same are indorsed upon or attached to the policy." The defendant's rules were not indorsed upon or attached to the receipt. As a consequence, there was nothing in the transaction alerting the applicant to the fact that the company might make an independent inquiry respecting his physical condition preliminary to satisfying itself respecting his insurability.

The application and receipt in the case at bench, in the light of the understanding of an ordinary layman under the circumstances attendant upon the instant situation, did not make it clear by unequivocal terms that the company's satisfaction respecting applicant's insurability was a condition precedent to the existence of interim insurance.

The judgment is reversed.

Brown (Gerald), P. J., concurred.

WHELAN, J.—I concur that the judgment of nonsuit

should be reversed, but for reasons other than those upon which the majority opinion rests.

The action was by the beneficiary named in an application for insurance by an applicant who met his death by accident the day following the making of the application and the issuance to him of a receipt, the language of which, almost in full, is set out in the majority opinion. I agree with the trial court that the language of the receipt is unambiguous.

However, the amended complaint here alleged the satisfaction of the conditions set forth in the receipt; the answer did not deny the allegation of satisfaction of the conditions. The pretrial order did not define as an issue whether the applicant was insurable at the time the payment was made.

Defendant, by answer, set up the special defense of false representations and concealment as to the decedent's medical history. It did not allege that applicant was noninsurable on medical grounds at the time of his application, but rather that defendant would not have acted as it did with regard to the application for insurance but for the false representation and concealment.

Because of the admission by the pleadings of the fact of insurability and performance of the other conditions, which was passed over in granting the motion for nonsuit, the judgment should be reversed and the case remanded for trial upon the issue of fraudulent concealment or misrepresentation, and if amendment to the answer be permitted, of insurability. It should be for the trial court to consider whether, if appropriate motions are made, defendant should be allowed to amend its answer.

I believe, further, that if upon a retrial the defendant should be permitted to deny that the applicant was insurable on the relevant date, the burden should be upon the defendant to establish the fact of noninsurability.[1]

It is only reasonable that an insurance company that has

[1]It is noted in 7 Stanford Law Review, 292, at page 293 (*"Binding Receipts" in California*) that the jury in *Ransom* v. *Penn Mut. Life Ins. Co.*, 43 Cal.2d 420 [274 P.2d 633] was instructed by the trial court as follows: "Plaintiff must prove by a preponderance of the evidence that the applicant was acceptable under the company's rules of insurance upon the plan, at the rate of premium, and for the amount applied for, or that the policy was actually delivered." The jury verdict favored the plaintiff. The Supreme Court did not touch upon the propriety of the instruction, nor even mention it; but said: "The insurance coverage described in the application came into existence upon receipt of the application and the premium payment after Ransom had been examined by defendant's doctor." (P. 425.) The case, therefore, is not opposed to the theory that the burden of proving noninsurability is upon the company.

solicited and accepted, although subject to approval, an application for life insurance, accepts prima facie the insurability of the applicant, even though insurability be made a condition precedent to the issuance of a policy.

The usual rule that the burden of proving the fulfillment of a condition precedent to a defendant's duty is on the plaintiff (*Draper* v. *Patterson*, 156 Cal.App.2d 606, 608 [319 P.2d 694]; Corbin, Contracts, § 749) should be abrogated in such a case.

The courts of a majority of states hold that in an action on a life insurance policy the insurer has the burden of establishing the defense that the insured was not in good health at the time of delivery of the policy, where the good health of the insured at the time of payment of the first premium was declared by the policy to be a condition to its becoming effective. (29A Am.Jur. § 1849, p. 911.) (See cases and annotation in 109 A.L.R. 921.) Some of the cases regard the provision as a condition precedent; other cases hold that noncompliance with the provision is an affirmative defense.

If the burden is upon the insurer to prove noninsurability under the terms of a policy actually issued, it is not unreasonable to extend the rule to a liability founded upon an application and a receipt, as in the present case.

Section 10115, Insurance Code, makes the insurer liable if, after death but before issuance of a policy, it is determined that the applicant on the date of his application was insurable under the regular underwriting practices and standards of the insurer.[2] The proof of such practices and standards is

---

[2] Section 10115, Insurance Code, reads as follows: ''When a payment is made equal to the full first premium at the time an application for life insurance other than group life insurance is signed by the applicant and either (1) the applicant received at that time a receipt for said payment on a form prepared by the insurer, or (2) in the absence of such a receipt the insurer receives the said payment at its home office, branch office, or the office of one of its general agencies, and in either case the insurer, pursuant to its regular underwriting practices and standards, approves the application or the issuance by it of a policy of life insurance on the plan and for the class of risk and amount of insurance applied for, and the person to be insured dies on or after the date of the application, on or after the date of the medical examination, if any, or on or after any date specially requested in the application for the policy to take effect, whichever is later, but before such policy is issued and delivered, the insurer shall pay such amount as would have been due under the terms of the policy in the same manner and subject to the same rights, conditions and defenses as if such policy had been issued and delivered on the date the application was signed by the applicant. The provisions of this section shall not prohibit an insurer from limiting the maximum amount for which it may be liable prior to actual issuance and delivery of the policy of life insurance either to (1) an amount not less than its established maximum retention, or to (2) fifty thousand dollars ($50,000), if a statement to this effect is included in the application.''

peculiarly available to the insurer; and it should have the burden of showing nonconformity thereto.

I have stated the view that the language of the receipt and application is not ambiguous so as to require a finding of automatic liability (except as the question of fraud may affect the outcome), as in *Ransom* v. *Penn Mutual Life Ins. Co.,* 43 Cal.2d 420 [274 P.2d 633]. In *Ransom,* the application first stated that if the condition of payment of the premium were met, as it undoubtedly was met, the insurance would be in force from the date of the application; a further proviso was then tacked on.

The court said, at page 425: "The clause quoted above is subject to the interpretation that the applicant is offered a choice of either paying his first premium when he signs the application, in which event 'the insurance shall be in force . . . from the date . . . of the application,' or of paying upon receipt of the policy, in which event 'no insurance shall be in force until . . . the policy is delivered.' The understanding of an ordinary person is the standard which must be used in construing the contract, and such a person upon reading the application would believe that he would secure the benefit of immediate coverage by paying the premium in advance of delivery of the policy. . . . defendant drafted the clause, and had it wished to make clear that its satisfaction was a condition precedent to a contract, it could easily have done so by using unequivocal terms. While some of the language tends to support the company's position, it does no more than produce an ambiguity, and the ambiguity must be resolved against defendant. (Civ. Code, § 1654; see cases collected in 14 Cal.Jur. 443-446.)"

The Supreme Court found that the application and receipt created interim insurance.

It may be futile to distinguish between the language of the receipt and application in the present case and in *Ransom.* A writer in 7 Stanford Law Review 292 *("Binding Receipts" in California)* expresses the view that it is doubtful that any redrafting of the application and receipt is possible to achieve a nonambiguous result. A writer in 63 Yale Law Journal 523 *(Life Insurance Receipts: The Mystery of the Non-binding Binder)* speaks of the search of the insurance company draftsman "for an alchemy of words which no court can find ambiguous."

Nevertheless, there are distinctions in the language used. Whereas the *Ransom* receipt spoke of the "first premium" to

be paid in the future by "exchange for the attached receipt," the present receipt says: "If an amount equal to the full first premium . . . has been paid with the application." Here, also, all the contingencies are expressed before the consequence is stated.

There are differences, too, in the condition of the statute law. At the time the decedent in *Ransom* made application for insurance, section 10115, hereinbefore referred to, imposed liability if the applicant died before he received the policy but after the company had approved the application. Since Ransom died before the company approved his application, the statute was not applicable to his case.

The unconscionable conduct of an insurance company in receiving money without giving coverage existed in the *Ransom* situation, where if death intervened before approval of the application, there was neither statutory liability, as under present section 10115, nor any objective standard by which liability could be fixed under the terms of the receipt.

. It would be more difficult to make effective distinctions between the language used in the present receipt and application and that used in the receipts and applications in *Brunt* v. *Occidental Life Ins. Co.,* 223 Cal.App.2d 179 [35 Cal.Rptr. 492] (in which a hearing by the Supreme Court was not requested)[3]; *Metropolitan Life Ins. Co.* v. *Grant,* 268 F.2d 307 (in which there is a dissenting opinion finding no ambiguity in the language of the documents); and *Wood* v. *Metropolitan Life Ins. Co.,* 193 F.Supp. 371, affirmed in *Metropolitan Life Ins. Co.* v. *Wood* (9th Cir. 1962) 302 F.2d 802.

Indeed, in *Metropolitan Life Ins. Co.* v. *Grant, supra,* 268 F.2d 307, 309, the court said: ". . . the California Supreme Court [in *Ransom*] did not approach the problem as one dealing with fine niceties of terminology."

The district court, in *Wood* v. *Metropolitan Life Ins. Co., supra,* 193 F.Supp. 371, 373-374, stated that the defendant insurance company conceded that *Ransom* and *Metropolitan Life Ins. Co.* v. *Grant,* 268 F.2d 307, hold: " '. . . that where an applicant for insurance pays the full first premium called for under the policy applied for at the time of application and is given a receipt for such payment, the applicant is covered by insurance unless and until his application is rejected by the company, regardless of whether or not he is an insurable risk.' "

---

[3] *Brunt* had to do with an accident and health policy. Section 10115 had no application in that case.

If such were the holding in *Ransom,* the question must be considered closed. However, the learned writer of the opinion in *Brunt* interpreted the holding in *Ransom* to be: ". . . that the language used in the application stated a *condition subsequent* rather than a *condition precedent.* In this connection, the court declared that 'had [the company] wished to make clear that its satisfaction [as to the applicant's insurability] was a condition precedent to a contract, it could easily have done so by using unequivocal terms.' (43 Cal.2d 420, 425.)" (*Brunt* v. *Occidental Life Ins. Co.,* 223 Cal.App.2d 179, 183 [35 Cal.Rptr. 492].) With that interpretation I agree.

*Brunt* also poses these questions, at page 185: "There is no way of knowing, however, how long in advance of the approval of the application or issuance of the policy the requisite opinion will be formed, whether three weeks or three months. If the above opinion were not forthcoming within one month's time, would the company expect another month's payment in advance without some sort of temporary coverage? In that event, some further acts might also be required, perhaps in the form of a medical examination."

However, the question as to the company's future action does not itself constitute an ambiguity.[4] The insurer would be held to a reasonable time and could be at the disadvantage of being charged with bad faith if it did not proceed reasonably; but in the instant case, certainly, the factual situation is seized for all time in the grip of death. If the company's liability must be declared by a court, it can be declared after an opportunity has been given to prove whether the decedent was noninsurable.

Consideration must be given to a condition of the present receipt: "If the medical examinations, if any, required by the Company are completed . . ." Again, that language is unambiguous, but it creates this difficulty: If under the company's rules, and because of the information obtained from applicant's medical doctor, the company would have required a medical examination, the now deceased applicant would be unable to comply. It may be urged that such impossibility would be an insuperable block to recovery by the beneficiary, and would make it necessary on grounds of public policy to

---

[4]The receipt in the present case contained this language: "If you do not hear from the Company regarding the proposed insurance within 30 days, notify the Company at its Home Office in Los Angeles, California, giving the name of the agent, date and amount paid, and the number of this receipt."

hold that the applicant, as in *Ransom*, was covered with interim insurance. I suggest that there is no such necessity; that the quoted condition in the present factual situation be considered only as going to the general question of decedent's insurability.

Such would be the effect under section 10115, Insurance Code, if the burden of disproving the fulfillment of the conditions precedent be upon the defendant.

None of the decisions cited herein mentions section 10115, excepting *Metropolitan Life Ins. Co. v. Wood, supra* (9th Cir. 1962) 302 F.2d 802, where section 10115 was mentioned; there the court found that the company assumed a greater liability by contract than that imposed by section 10115; based its decision upon the theory of a contract terminable by a condition subsequent, to wit, the determination of non-insurability; and that the obligation to pay matured before the condition subsequent occurred.

In *Metropolitan Life Ins. Co. v. Wood, supra*, 302 F.2d 803, the per curiam opinion stated: "This Court is not the proper forum in which to suggest that the rule of *Ransom* be reconsidered." It is not suggested that that rule be reconsidered. I disagree that the rule is as interpreted by *Metropolitan Life Ins. Co. v. Wood, supra*.

No doubt section 10115 was enacted to meet some recognized need. While it did not create the practice of taking a deposit with an insurance application, it recognizes and permits the practice and declares what shall be the minimum liability-fixing effects of the practice.

The majority opinion states that there is an uncertainty as to the company's rules, and that any rules referred to in a life insurance policy must be made a part of the policy. (Ins. Code, § 10113.)

However, the permissive language of section 10115 disposes of the argument that the receipt constitutes a contract of insurance under section 10113, requiring the endorsement thereon of the company's "rules for a policy" referred to in the receipt.

If, despite the lack of ambiguity, the company is to be held liable for the death which occurred during the period of processing, regardless of the applicant's insurability, that can be done only upon grounds of public policy.

All public policy requirements with regard to the so-called "binding receipt" issued at the time of making application for insurance would be met if the insurer is required to pay

an insurable applicant whose death occurs or whose condition as to insurability changes before the determination of insurability as of the time of the application. There might still be cases, as in *Ransom,* where the language of the receipt or application lends itself to the reasonable interpretation that would be placed upon it by the ordinary man that the insurance is in force from the date of the application regardless of insurability and will continue in force unless terminated by the occurrence of a condition subsequent prior to the fixing of liability.

The questions of policy involved are discussed at length in 63 Yale Law Journal 523 (*Life Insurance Receipts: The Mystery of the Non-binding Binder*) and some solutions are there suggested.[5]

A person noninsurable in fact according to objective standards cannot reasonably expect to be covered by insurance; such a person is not, by making his application with one company and advancing an amount equal to the amount required for the first premium, done out of the opportunity of obtaining binding insurance from another company, because another company likewise would not insure.

The ordinary applicant for life insurance should not reasonably believe that if in fact uninsurable he would be covered

---

[5]The writer of that comment divides the so-called binding receipts according to their wording into two main categories, the insurable risk type, and the approval type; and says: ". . . writers have suggested that only the insurable risk type protects the applicant in the interval between completion of the application and issuance of the policy. [P. 528.]

". . . . . . . . . .
"Where an applicant holds an insurable risk binder and the company rejects the policy due to intervening death, recovery is generally allowed, absent proof of non-insurability. [P. 530.]

". . . . . . . . . .
"While recovery is not certain on these binders, it is, with the exception of the *Maddox* case, denied only where the applicant was not an insurable risk. Insurable risk binders form a small proportion of the cases, perhaps indicating that because of their greater clarity, the questions of coverage under them are more easily settled without resort to litigation.

". . . . . . . . . .
"In the more recent cases, there has been a tendency to allow recovery, if the applicant was an insurable risk, regardless of the type of binder in question. [P. 535.]

"Denial of recovery on the ground that the applicant was not an insurable risk, is not subject to criticism. Here the company would seem justified in refusing payment since in no circumstances does it accept such applications. Nor can it be argued that the deceased relied on the binder to his detriment, because he would not in any case have been able to obtain insurance elsewhere." [P. 532.]

by insurance at the same premium that he might pay if he were insurable.

The suggested solution was statutory control of binding receipts as the only satisfactory protection to an insurance applicant. The author suggested a form of binding receipts statute based upon the fact of insurability on the date of payment, under standards generally applied by reputable insurance companies; and which would also contain a provision that the company might provide temporary coverage for an applicant regardless of whether the applicant was an insurable risk at the time of payment. The writer in the Yale Law Journal in 1954 did not mention California's Insurance Code section 10115, adopted in 1949 and amended in 1951.

California has heretofore recognized that the effectiveness of a life insurance policy may be made contingent upon the good health of the insured. (*American Nat. Ins. Co.* v. *Herrera,* 211 Cal.App.2d 793 [27 Cal.Rptr. 641].) The theoretical possibility of such condition is recognized by *Ransom* and *Brunt.*

To the action of the majority in reversing, I would add a direction as to the issues to be determined, and as to the existence of a prima facie showing of fulfillment of conditions precedent, in the event that defendant be permitted to amend.