[S. F. No. 19016.   In Bank.   Oct. 8, 1954.]

LOIS M. RANSOM, Respondent, v. THE PENN MUTUAL LIFE INSURANCE COMPANY (a Corporation), Appellant.

Keesling & Keesling and Henry C. Clausen for Appellant.

James F. Boccardo and Edward J. Niland for Respondent.

GIBSON, C. J.—The jury impliedly found that defendant refused to perform a contract in which it agreed with plaintiff's deceased husband, Ralph W. Ransom, to insure his life. Defendant has appealed from the judgment against it, contending that no contract of insurance was in force at the time of Ransom's death and that if any contract existed it was vitiated by fraud.

In September 1949 Ransom, who was 28 years old, was solicited for insurance by an agent of defendant. A doctor selected by defendant examined Ransom and found nothing wrong with his physical condition. Ransom made a written application for insurance on a form provided by defendant and paid the first premium in full. In the application he stated that he had previously been examined by a Dr. Long, and, in response to inquiries made by defendant, Dr. Long replied that Ransom visited him in 1947 complaining of a "heavy feeling" in the chest. Dr. Long stated that his examination of Ransom revealed a "moderately obese patient with no important clinical findings," that laboratory studies included an electrocardiogram which was "essentially normal," that the first blood pressure reading was above normal and that the second reading taken about a week later under less tension was normal as to the systolic pressure and a little above normal as to the diastolic pressure. Dr. Long advised Ransom to lose weight and "reassured" him as to his physical status.

After receiving Dr. Long's report, defendant requested Ransom to submit to further medical examination, but before this could be arranged Ransom was killed in an automobile accident. An autopsy was performed which disclosed no evidence of disease and showed that Ransom's death resulted from external violence. Several days after the accident defendant, having received information of Ransom's death, tendered plaintiff the full amount of the first premium payment and informed her that, in view of Dr. Long's report, Ransom's application could not be approved.

The first question presented is whether an insurance agreement was in effect at the time of Ransom's death. The application contained the following clause: "If the first premium is paid in full in exchange for the attached receipt signed by the Company's agent when this application is signed the insurance shall be in force, subject to the terms and conditions of the policy applied for, from the date of Part I or Part II of this application, whichever is the later, provided the Company shall be satisfied that the Proposed Insured was at that date acceptable under the Company's rules for insurance upon the plan at the rate of premium and for the amount applied for, but that if such first premium is not so paid or if the Company is not satisfied as to such acceptability, no insurance shall be in force until both the first premium is paid in full and the policy is delivered while the health, habits, occupation and other facts relating to the Proposed Insured are the same as described in Part I and Part II of this application and in any amendments thereto."

We must determine whether a contract of insurance arose immediately upon receipt by defendant of the completed application with the premium payment, subject to the right of defendant to terminate the agreement if it subsequently concluded that Ransom was not acceptable, or whether, as defendant contends, its satisfaction as to Ransom's acceptability for insurance was a condition precedent to the existence of any contract.

The courts in several jurisdictions have construed clauses similar to the one involved here. A number of decisions have held, in accordance with defendant's view, that no contract of insurance exists until the insurer has been satisfied as to an applicant's acceptability, and that the provision that the insurance shall be in force from the date of the application means that, if and when the company is satisfied, the contract shall be considered to relate back and take effect as of that date. (*Mofrad* v. *New York Life Ins. Co.* [10th Cir.], 206 F.2d 491; *Cooksey* v. *Mutual Life Ins. Co.*, 73 Ark. 117 [83 S.W. 317, 108 Am.St. Rep. 26]; *Maddox* v. *Life & Casualty Ins. Co. of Tenn.*, 79 Ga.App. 164 [53 S.E.2d 235]; *Gerrib* v. *Northwestern Mut. Life Ins. Co.*, 256 Ill.App. 506; *Gonsoulin* v. *Equitable Life Assur. Soc.*, 152 La. 865 [94 So. 424]; *Bearup* v. *Equitable Life Assur. Soc. of the U.S.*, 351 Mo. 326 [172 S.W.2d 942]; *Raymond* v. *National Life Ins. Co.*, 40 Wyo. 1 [273 P. 667].)

On the other hand, a number of courts have held.that the provision to the effect that the insurance shall be in force from the date of the application if the premium is paid gives rise to a contract of insurance immediately upon receipt of the application and payment of the premium, and that the proviso that the company shall be satisfied that the insured was acceptable at the date of the application creates only a right to terminate the contract if the company becomes dissatisfied with the risk before a policy is issued. (*Gaunt* v. *John Hancock Mutual Life Ins. Co.*, 160 F.2d 599, 601-602; *Occidental Life Ins. Co.* v. *Lame Elk White Horse* [D.C. Mun. Ct.], 74 A.2d 435, 438-439; *Reck* v. *Prudential Ins. Co. of America*, 116 N.J.L. 444 [184 A. 777, 778]; *Duncan* v. *John Hancock Mut. Life Ins. Co.*, 137 Ohio St. 441 [31 N.E.2d 88, 90-91]; *Albers* v. *Security Mut. Life Ins. Co.*, 41 S.D. 270 [170 N.W. 159, 160]; see *Reynolds* v. *Northwestern Mut. Life Ins. Co.*, 189 Iowa 76 [176 N.W. 207, 208-209]; cf. *Stonsz* v. *Equitable Life Assur. Soc.*, 324 Pa. 97 [187 A. 403, 405-406, 107 A.L.R. 178] [stating that this view represents a trend to construe the conditions liberally]; *Western & Southern Life Ins. Co.* v. *Vale*, 213 Ind. 601 [12 N.E.2d 350, 354-355].)

In the Gaunt case Judge Learned Hand stressed the fact that an application must be construed as it would be taken by the ordinary applicant, and that such a person would assume that he was getting immediate insurance for his money and would not understand that he was left uncovered until the insurer at its leisure approved the risk. (160 F.2d at pp. 601-602.) In *Albers* v. *Security Mut. Life Ins. Co.*, 41 S.D. 270 [170 N.W. 159, 160], it was said that if the company did not intend that the insurance should be effective from the date of the application it would be obtaining a premium for a period during which there was no insurance, and this would not be dealing honestly with the insured. (See also *Reynolds* v. *Northwestern Mut. Life Ins. Co.*, 189 Iowa 76 [176 N.W. 207, 208-209]; *Western & Southern Life Ins. Co.* v. *Vale*, 213 Ind. 601 [12 N.E.2d 350, 354-355]; *Stonsz* v. *Equitable Life Assur. Soc.*, 324 Pa. 97 [187 A. 403, 405-406].) In *Duncan* v. *John Hancock Mut. Life Ins. Co.*, 137 Ohio St. 441 [31 N.E.2d 88, 91], the court said that the provisions of the clause are obviously ambiguous and susceptible of two different constructions, that the insurer could have used clear language and that the ambiguity must be resolved against the company. (See also *Gaunt* v. *John Hancock Mut. Life Ins. Co.*, 160 F.2d 599, 601.)

We are of the view that a contract of insurance arose upon defendant's receipt of the completed application and the first premium payment. The clause quoted above is subject to the interpretation that the applicant is offered a choice of either paying his first premium when he signs the application, in which event "the insurance shall be in force . . . from the date . . . of the application," or of paying upon receipt of the policy, in which event "no insurance shall be in force until . . . the policy is delivered." The understanding of an ordinary person is the standard which must be used in construing the contract, and such a person upon reading the application would believe that he would secure the benefit of immediate coverage by paying the premium in advance of delivery of the policy. There is an obvious advantage to the company in obtaining payment of the premium when the application is made, and it would be unconscionable to permit the company, after using language to induce payment of the premium at that time, to escape the obligation which an ordinary applicant would reasonably believe had been undertaken by the insurer. Moreover, defendant drafted the clause, and had it wished to make clear that its satisfaction was a condition precedent to a contract, it could easily have done so by using unequivocal terms. While some of the language tends to support the company's position, it does no more than produce an ambiguity, and the ambiguity must be resolved against defendant. (Civ. Code, § 1654; see cases collected in 14 Cal.Jur. 443-446.)

Defendant argues that because of the blood pressure readings reported by Dr. Long, Ransom was unacceptable under company rules for the particular insurance plan applied for. As we have seen, however, a contract for the insurance coverage described in the application came into existence upon receipt of the application and the premium payment after Ransom had been examined by defendant's doctor. The contract was not terminated by the request for further medical examination. The request indicated that no final decision had as yet been reached as to whether Ransom was an acceptable risk on the plan applied for. We need not decide, therefore, whether, as suggested by some courts, such a contract can be terminated only by actual rejection of the application and return of the premium payment. (See *Reynolds* v. *Northwestern Mut. Life. Ins. Co.*, 189 Iowa 76 [176 N.W. 207, 209] ; *Colorado Life Co.* v. *Teague*, (Tex.Civ.App.)

117 S.W. 2d 849, 854; *Reck* v. *Prudential Ins. Co. of America*, 116 N.J.L. 444 [184 A. 777, 778].)

There is no merit in defendant's contention that it is not bound by the contract because its agent in acknowledging payment of the premium failed to use the receipt form attached to the application. It is not disputed that the premium was paid, and it is not claimed that there was any material difference between the receipt the agent gave to Ransom and the one attached to the application. There was substantial compliance with the directions contained in the application, and defendant cannot evade liability because its agent did not detach and use the form on the application in making out the receipt. (See *Fortin* v. *New York Life Ins. Co.*, 185 Minn. 523 [241 N.W. 673]; *Lueck* v. *New York Life Ins. Co.*, 185 Minn. 184 [240 N.W. 363, 364].)

There is likewise no merit to defendant's contention that plaintiff cannot recover because a form of the policy applied for was not introduced in evidence. The application signed by Ransom contains the essential elements of a policy of insurance, as enumerated by section 10113 of the Insurance Code, and plaintiff's cause of action is based upon the contract as set forth in the application rather than upon the unissued policy. (*Cf. Jones* v. *International Indem. Co.*, 39 Cal.App. 706, 709 [179 P. 692].) The terms of the policy were, of course, within the knowledge of defendant, and, under the circumstances, defendant had the burden of showing that the form of the unissued policy contained provisions which might bar recovery, but no such showing was made here.

The next question is whether the evidence establishes as a matter of law that Ransom acted fraudulently by replying "No" in his application to the questions which asked whether he had ever had "high blood pressure," whether he had ever had a "pain" in his chest or any "illness" or "disease" other than as specified in the application and whether he had an "electrocardiogram" made.

There is no evidence that Ransom was ever informed that he had "high blood pressure." He was told in 1947 by Dr. Long that he had a "mild hypertension," but it does not appear that he knew what the term meant, and, as a layman, he might reasonably have failed to understand that it had any relation to blood pressure. There is likewise no evidence that Ransom ever had a pain in his chest. Nor was he guilty of fraud in answering the question whether he had

ever had any "illness" or "disease" because he failed to disclose that he had experienced a "heavy feeling" in his chest at the time he consulted Dr. Long in 1947. It has been held that questions concerning illness or disease do not relate to minor indispositions but are to be construed as referring to serious ailments which undermine the general health. (*Pierre* v. *Metropolitan Life Ins. Co.*, 22 Cal.App.2d 346, 349-350 [70 P.2d 985] ; *Travelers Ins. Co.* v. *Byers*, 123 Cal.App. 473, 477-478 [11 P.2d 444] ; *Poole* v. *Grand Circle W.O.W.*, 18 Cal.App. 457, 459 [123 P. 349].) A conclusion that Ransom's difficulty was minor in nature is warranted by the evidence that the examinations by doctors showed that his heart and chest were normal and that there was nothing seriously wrong with his physical condition.

The fact that Ransom erroneously answered "No" to the question whether an electrocardiogram had ever been made of his heart action is immaterial. An incorrect answer on an insurance application does not give rise to the defense of fraud where the true facts, if known, would not have made the contract less desirable to the insurer. (See Ins. Code, § 334; *Hawley* v. *Liverpool, London & Globe Ins. Co.*, 102 Cal. 651, 654 [36 P. 926] ; *Wormington* v. *Associated Indem. Corp.*, 13 Cal.App.2d 321, 324 [56 P.2d 1254] ; *Kleiber M. T. Co.* v. *International Indem. Co.*, 106 Cal.App. 709, 723-724 [289 P. 865].) The electrocardiogram showed that Ransom's heart was "essentially normal," and defendant does not claim that this part of the medical history, if known, would have influenced it to consider the risk less desirable.

Defendant complains that remarks made by plaintiff's counsel during the course of the trial amounted to prejudicial misconduct. The trial court instructed the jury to disregard some of these remarks, and, as to them, there clearly was no prejudice. The remaining remarks were not of such a nature as to result in a miscarriage of justice.

The judgment is affirmed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., Spence, J., and Peek, J. pro tem.,* concurred.

Appellant's petition for a rehearing was denied October 27, 1954. Spence, J., was of the opinion that the petition should be granted. Edmonds, J., did not participate.

---

*Assigned by Chairman of Judicial Council.