[Civ. No. 995. Fifth Dist. Apr. 29, 1969.]

PAULINE R. YOUNG, Plaintiff and Appellant, v. METRO-
POLITAN LIFE INSURANCE COMPANY et al.,
Defendants and Respondents.

Francis L. Smee for Plaintiff and Appellant.

Gallagher, Baker & Manock and John J. Gallagher for Defendants and Respondents.

GARGANO, J.—Plaintiff appeals from an adverse judgment of the court below denying her claim of coverage under

the insurance policy her husband applied for prior to his untimely death. Again we are presented with the basic question as to whether an insurance company, which collects a full annual premium with an insurance application, may deny liability under the policy if the applicant dies before his application is approved and the policy issued. And, as usual, we are faced with the perplexing question as to whether the applicant who paid the premium was deceived into believing that he was immediately covered under the policy, to the detriment of his beneficiary.

The undisputed facts of this case are these: On August 19, 1966, Harley Baker, an agent of the Metropolitan Life Insurance Company, hereinafter referred to as the company, called on plaintiff's husband, J. R. Young, at Young's office in Porterville, for the purpose of selling him a policy of ordinary life insurance in the amount of $25,000, with double indemnity for accidental death. After some discussion, Young agreed to purchase the policy, naming plaintiff as his beneficiary. Then Baker, who was seated opposite Young at his desk, assisted Young in making out the application. He filled in Young's answers to the questions contained in the part designated as Part ''A,'' turned the application around and had Young sign at the bottom of that part. He also had Young sign the authorization to release medical information, and the aviation questionnaire.

Upon signing the application, Young gave Baker a check in the amount of $890.50 in payment of the first full annual premium for both the ordinary life insurance and the additional $25,000 benefit for accidental death. Baker then detached the conditional receipt which was attached to the application and handed it to Young. Baker sent the rest of the application to Dr. Richard N. Natzke in Porterville who was to complete the medical portion. He also made an appointment for Dr. Natzke to examine Young on August 26, 1966. However, Young was accidentally burned a few days before he could keep the appointment; he died as a result of the accident on September 8, 1966.

After Young's death plaintiff demanded a payment of $50,000 from the company under the double indemnity provision of the insurance policy. The company rejected her demand and instead tendered $25,000 and a return of the premium, asserting that this was the extent of its liability under Part ''A'' of the application and under the conditional receipt which was handed to Young after he paid the

premium, because Young died before taking the required medical examination. Part "A" of the application states: "The Company will incur no liability by reason of this application, except as may be provided in a Conditional Receipt given on and bearing the same date as this application, until a policy has been delivered and the full first premium specified in the policy has actually been paid to and accepted by the Company during the lifetime and continued insurability of the Applicant, in which case such policy will take effect as of the date of issue recited therein."

The conditional receipt reads in pertinent part as follows:

"(1) All of the following conditions precedent must be fulfilled before the Company has any liability whatsoever under this Paragraph (1):

(a) a payment equal to the full first premium must be made at the time the application is signed by the applicant; and

(b) the person to be insured must have undergone all medical examinations which the Company may require; and

(c) the application must have been approved by the Company at its Home Office for the issuance of a policy of life insurance on the plan and for the class of risk and for the amount of insurance applied for; and

(d) there is no misrepresentation in the application. If and only if all the foregoing conditions precedent have been fulfilled and if the person to be insured dies before the policy applied for becomes effective, the Company will pay an amount equal to the amount of life insurance applied for. Any amount paid under this Paragraph (1) will be paid to the beneficiary or beneficiaries as expressed in the application made this date.

"(2) If nothing is payable under the terms of Paragraph (1) above, or under the policy applied for or a policy offered in lieu of the one applied for, and if a payment is made equal to the full first premium at the time the application is signed by the applicant, and if the person to be insured dies within 30 days after the completion of Part A of the application as a result of accidental bodily injury caused solely by external violence, the Company will pay, in one sum to the beneficiary or beneficiaries as expressed in the application made this date, the amount of life insurance which would have been payable if the policy applied for had been issued (not including any additional accidental means death benefit), provided, however, that (a) the aggregate amount payable under this provision and similar provisions of all conditional receipts issued by the Company in connection with applications on the person to be

insured shall not exceed $25,000, and (b) no such payment will be made if death occurs as the result of suicide.

"(3) If the amount received is less than the full first premium on the policy applied for and if the Company offers, upon payment of the balance of the full first premium, to deliver the policy applied for and the offer is refused, the Company will retain from the amount received the costs incurred for medical examination, the amount of $1 to help defray the cost of issuing such policy and will return the balance, if any, upon surrender of this receipt.

"(4) The amount received will be refunded if the application is declined or if a policy is issued other than as applied for and is not accepted."

Plaintiff presents three main contentions for reversal of the judgment. First, she asserts that when an insurance carrier takes an application for certain specified coverage and at the same time collects the annual premium, it is liable under the policy applied for as a matter of public policy. In short, relying on *Ransom* v. *Penn Mut. Life Ins. Co.*, 43 Cal. 2d 420 [274 P.2d 633], plaintiff maintains that the company's right to reject her deceased husband's application for his failure to take or pass the required medical examination was a condition subsequent, as a matter of law, and could not be exercised after his death. Second, she alleges that the conditional receipt was ambiguous, and the ambiguity must be resolved against the company which drafted it. Third, plaintiff argues that insurance contracts are contracts of adhesion and hence the company is liable under the policy for which her husband applied because its agent failed to call the limited interim coverage provided by Paragraph (1) of the conditional receipt to his attention.

At the outset, we do not construe *Ransom* to hold that an insurance carrier can never, as a matter of public policy, avoid liability under an unissued insurance policy when it collects the first annual premium for the policy upon receiving the application and the applicant dies before his application is rejected. On the contrary, we believe that it is clear that the Supreme Court would have reached a different result in that case if the insurance carrier had limited its liability pending its acceptance of the application in plain language. Significantly, the court stated: ". . . Moreover, defendant drafted the clause, and had it wished to make clear that its satisfaction was a condition precedent to a contract, it could easily have done so by using unequivocal terms. While some of

the language tends to support the company's position, it does no more than produce an ambiguity, and the ambiguity must be resolved against defendant. . . .'' (43 Cal.2d at p. 425.) Moreover, the dicta of *Wood* v. *Metropolitan Life Ins. Co.*, 193 F.Supp. 371, relied upon by appellant in support of her opposite position, was impliedly rejected by our Supreme Court in the recent case of *Slobojan* v. *Western Travelers Life Ins. Co.*, 70 Cal.2d 432, 441 [74 Cal.Rptr. 895, 450 P.2d 271]. In that case the court pointed to its earlier admonition concerning the use of obscure language by insurance carriers in drafting insurance applications and said: '' ' ''It may be inferred from defendant's failure to remedy the situation by appropriate language that the companies would rather assume a calculated risk in an isolated case such as this, than lose the benefits flowing from the general acceptance of premiums in advance, thus binding and committing the insured immediately to the contract as written.'' ' (*Brunt* v. *Occidental Life Ins. Co.* (1963) 223 Cal.App.2d 179, 186 [35 Cal.Rptr. 492], quoting from *Wood* v. *Metropolitan Life Ins. Co.* (1961) 193 F.Supp. 371, 374, affd. 302 F.2d 802.''

We also reject plaintiff's contention that the phraseology used by the company in the application and conditional receipt, limiting its liability to a $25,000 death benefit for accidental death, is ambiguous and misleading, even while recognizing, as we must, that the standard to be applied is the understanding of an ordinary person, not that of a lawyer or someone conversant by experience and training with insurance terminology. The application plainly states that '' [t]he Company will incur no liability by reason of this application, except as may be provided in a conditional receipt . . . until a policy has been delivered. . . .'' Moreover, albeit the wording of the conditional receipt is somewhat cumbersome, it emphatically states that the policy applied for shall become effective ''if and only if'' all conditions ''precedent'' enumerated in Paragraph (1) have been complied with, and then makes it reasonably clear that the only coverage provided to the applicant during the interim is a $25,000 payment for accidental death. Thus, like the trial court, we cannot hold that plaintiff's husband, presumably a person of ordinary intelligence, would have been misled into believing that he was immediately covered by the insurance policy applied for. if he had been aware of the clause contained in Part ''A'' of the application to which we have referred and if he had carefully read the conditional receipt.

The cases relied upon by plaintiff for the opposite proposition are distinguishable. In *Ransom* v. *Penn Mut. Life Ins. Co., supra,* 43 Cal.2d 420, 423, the application read in pertinent part as follows: ". . . 'If the first premium is paid in full in exchange for the attached receipt signed by the Company's agent when this application is signed the insurance shall be in force . . . provided the Company shall be satisfied that the Proposed Insured was at that date acceptable under the Company's rules for insurance upon the plan at the rate of premium and for the amount applied for, but that if such first premium is not so paid or if the Company is not satisfied as to such acceptability, no insurance shall be in force until both the first premium is paid in full and the policy is delivered. . . ,' " Thus, the California Supreme Court understandably held that the defendant insurance company, having collected a premium from the applicant who died before his application was accepted, could not deny liability under the policy applied for because the language used in the application was calculated to lead an ordinary person to believe that he was offered a choice of either paying his first premium when he signed the application, in which event the insurance would be in force immediately, or paying upon receipt of the policy, in which event no insurance would be in force until the policy was delivered.

In *Metropolitan Life Ins. Co.* v. *Grant,* 268 F.2d 307, the applicant paid a premium under an insurance application that stated that if the application "is approved at the Company's Home Office for the class, plan and amount of insurance herein applied for, then the insurance in accordance with the terms of the policy applied for shall be in force from the date hereof." The applicant died accidentally before the date scheduled for his medical examination, and the company refused payment under the policy applied for. However, the United States Court of Appeals (9th Circuit) decided that the language used by the insurance carrier in that case was essentially similar to the language used in *Ransom* and held that it could not escape the obligation which an ordinary applicant would reasonably believe had been undertaken.

In *Allen* v. *Metropolitan Life Ins. Co.,* 44 N.J. 294 [208 A.2d 638], the application, as in the instant case, stated that the company incurred no liability "except as may be provided in a Conditional Receipt given on and bearing the same date as this application." However, the conditional receipt was somewhat obscure and provided, among other things, that the

policy would be effective as of the date of the application if it was approved at the home office.[1] Thus, the New Jersey Supreme Court held that the conditional receipt was misleading to the ordinary person and upheld the plaintiff's claim for full insurance coverage under the policy her deceased husband had applied for. In the instant case, neither the application which Young signed nor the deposit receipt which he received contained a relation back clause. On the contrary, the application states: "The Company will incur no liability by reason of this application, except as may be provided in a Conditional Receipt . . . until a policy has been delivered and the full first premium specified in the policy has actually been paid to and accepted by the Company . . . *in which case such policy will take effect as of the date of issue recited therein.*" (Italics ours.) Moreover, as we have stated, the deposit receipt emphatically provides that the policy applied for shall become effective "if and only if" all of the conditions "precedent" enumerated in Paragraph (1) have been fulfilled.

The remaining question is whether the company is nevertheless liable to the full extent of the policy applied for by Young on the ground that there is no evidence (nor a court finding) that the limited interim coverage contained in the conditional receipt was called to his attention.

It is now firmly settled that insurance contracts are contracts of adhesion between parties not equally situated (*Steven* v. *Fidelity & Cas. Co.,* 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284]; *Allen* v. *Metropolitan Life Ins. Co., supra,* 44 N.J. 294 [208 A.2d 638]). Consequently, the insurer, as the dominant and expert party in the field, must not only draft

---

[1]The conditional receipt read in pertinent part as follows: "*If the amount received on this date is equal to the full first premium on the policy applied for* and (1) the application as originally submitted is approved at the Company's Home Office for the policy applied for, either before or after the death of the Life Proposed, then in such circumstances the policy applied for will be issued effective as of this date or (2) if the Life Proposed dies within 30 days from this date as a result of accidental bodily injury caused by external violence, then, provided that a death benefit does not become payable under a policy issued pursuant to (1) above or under a policy other than the one originally applied for, the Company will pay the amount of life insurance applied for (not including any additional accidental means death benefit) subject to the following conditions: (a) the aggregate amount payable under this provision and similar provisions of all conditional receipts issued by the. Company in connection with applications on the Life Proposed shall not exceed $25,000, (b)ˑ payment will be made in one sum to whoever would have been entitled to payment if a policy ·had been issued, (c) no such · payment will be made if death occurs as the result of suicide."

This clause made it possible for the company to receive a premium for a period during which it did not provideˑthe coverage paid for.

such contracts in unambiguous terms but must bring to the attention of the insured all provisions and conditions which create exceptions or limitations on the coverage (*Steven* v. *Fidelity & Cas. Co.*, *supra*, 58 Cal.2d 862). Manifestly, it should have even a greater duty to call attention to such provisions or conditions when they are contained in receipts given to an applicant after he has paid the premium in advance, because the very acceptance of an advance premium by the carrier tends naturally toward an understanding of immediate coverage though it be temporary and terminable (*Wernecke* v. *Pacific Fid. Life Ins. Co.*, 238 Cal.App.2d 884 [48 Cal.Rptr. 251]). In short, to the ordinary layman, payment of the insurance premium constitutes payment for immediate protection, and it is unlikely that he would carefully read the fine print contained in a receipt unless he was given the incentive to do so by the carrier's agent.

Applying these principles to the instant case, we are impelled to reverse the judgment. The company offered no evidence to show that the limited liability clause contained in Part "A" of the application was called to Young's attention or that he read it. If anything, the evidence is clearly to the contrary. Baker, who was seated opposite Young at Young's desk, filled out Part "A" on Young's behalf and then secured Young's signature; and, significantly, Young first mistakenly signed the application under the medical part in the space reserved for the examining physician, indicating that he had not read it. Then, after Young signed the proper part of the application, he immediately paid the premium and was handed the conditional receipt by Baker, apparently without comment. It is hardly likely that Young carefully read the receipt at that stage of the proceeding. In fact, it is conceivable that he assumed that it was simply a receipt acknowledging payment of the premium and nothing more.

The company argues that decedent was provided with interim coverage, and hence his beneficiary received a $25,000 death benefit which she would not have received if her husband had not paid the premium. In other words, the company asserts that, unlike the cases relied upon by appellant, the insured was given some protection after he paid the first annual premium, and therefore there was ample consideration for the prepayment. Be this as it may, plaintiff's deceased husband paid the full annual premium for both ordinary life insurance and double indemnity for accidental death. Yet, according to the company, he did not receive that coverage. In

fact, according to the company, if Young had died of natural causes, his beneficiary would not have received insurance coverage of any kind, regardless of what Young may have reasonably understood when he paid the premium in advance.

The judgment is reversed.

Conley, P. J., and Stone, J., concurred.

A petition for rehearing was denied on May 28, 1969, and the following opinion was then rendered:

THE COURT.—█ Defendants have filed a petition for rehearing, contending that the contract of adhesion theory was not urged at the trial court level, and hence the defendant insurance company did not present evidence on this point. However, at the trial the company admitted that it collected the full annual premium for both the ordinary life insurance and the additional $25,000 benefit for accidental death which J. R. Young applied for when his application was taken. The defendant insurance company relied on the conditions contained in the conditional receipt to avoid liability under the insurance policy applied for. Thus, it had the burden of proving that the conditions of the conditional receipt were called to Young's attention. If the company has evidence to prove that these conditions were called to Young's attention, as it maintains, it can present this evidence at the new trial which we have ordered.

The petition for rehearing is denied.