Ruth S. MILLER, Plaintiff/Appellant,

v.

**REPUBLIC NATIONAL LIFE
INSURANCE COMPANY,**
Defendant/Appellee.

No. 82-4549.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1983.

Decided Sept. 1, 1983.

Melvyn D. Silver, Suden & Silver, San Jose, Cal., for plaintiff/appellant.

John L. Boos, Pettit & Martin, San Francisco, Cal., for defendant/appellee.

Before MERRILL, FLETCHER, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Appellant Ruth S. Miller appeals from an order granting summary judgment in favor of Appellee Republic National Life Insurance Co. (Republic). Miller contends that Republic improperly denied her deceased husband's application for life insurance based on a condition that was not known to exist at the time the application was submitted and the premium fully paid. Because certain genuine issues of material fact remain to be determined, the order granting summary judgment is reversed and the case remanded for trial.

## FACTS

The pertinent facts are undisputed. On November 15, 1977, Republic agent Alan Miller solicited his father, Fred Miller, to purchase a $50,000 life insurance policy. Within a week Fred Miller was examined by a doctor selected by Republic, and on November 22 Miller signed an application naming his wife Ruth as beneficiary. The application provided in part that,

> if the full first premium . . . is paid on the date of this application and the receipt bearing the same serial number as this application is issued to the Proposed Insured, then the liability of the Company shall be as stated in the receipt and the receipt be made a part hereof.

The application also reserved to Republic "60 days from the date of receipt of the application . . . to determine the insurability of the Proposed Insured on the basis on which the application is made or on another basis." Finally, the application stated that

> [o]nly the President, Vice President, Secretary or an Assistant Secretary of the Company can modify or discharge contracts or waive any of the Company's rights or requirements and then only in writing. No statement, representation or promise made by any other person shall be binding upon the Company.

Republic concedes for purposes of this appeal that Fred Miller paid his first year's premium in full on December 4, 1977. On the same day, Alan Miller assured his father that he was covered as of that date if

he was an insurable risk on that date. Fred Miller was given a receipt, which provided:

> The insurance under the policy for which application is made shall be effective on the date of this receipt or the date of completion of the medical examination (if and when required by the Company), whichever is the later date, if in the opinion of the authorized Officers of the Company . . . the Proposed Insured is insurable and acceptable for insurance under the rules and practices on the plan of insurance . . . . If the Proposed Insured is not so insurable and acceptable the Company has no liability under this receipt . . . .
>
> Company shall have 60 days from date of application to consider and act upon application . . . .

On December 8, Fred Miller was diagnosed by his personal physician as having a malignant brain tumor. Surgery was performed on December 14. When Republic learned of the surgery on December 15, it promptly denied Miller's application and on January 5, 1978, returned to Miller his uncashed check for the first year's premium. Miller died September 5, 1978.

When Ruth Miller's claim under the policy was denied by Republic, she brought the instant action. Republic impleaded Alan Miller, who then cross-complained against Republic.

Republic moved for summary judgment, and a hearing was held on November 16, 1981. The day after the hearing, Republic submitted an affidavit of one of its underwriters, Michael F. Marrinan, stating that Fred Miller was uninsurable under Republic's rules and practices "on whatever date he had the malignant brain tumor." The district court issued an order granting summary judgment for Republic.

## ANALYSIS

The district court's ruling may be affirmed only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to Miller, that there are no genuine issues of material fact and that Republic is entitled to judgment as a matter of law. *E.g., Dosier v.*

*Miami Valley Broadcasting Corp.,* 656 F.2d 1295, 1300 (9th Cir.1981).

In granting summary judgment for Republic, the district court ruled that any "temporary" coverage arising upon Republic's receipt of Miller's application and premium payment under the rule of *Ransom v. The Penn Mutual Life Insurance Co.,* 43 Cal.2d 420, 274 P.2d 633 (1954),[1] was timely canceled in accordance with the requirements of *Smith v. Westland Life Insurance Co.,* 15 Cal.3d 111, 539 P.2d 433, 123 Cal. Rptr. 649 (1975).[2] The California Supreme Court in *Ransom* held that an insurance contract *was* in force at the time of the proposed insured's death by virtue of the application and premium payment, although the insurer retained the right to terminate the coverage. 43 Cal.2d at 425, 274 P.2d at 635. In *Smith,* the court held that termination of the "temporary" coverage did not occur until the applicant received both notice of rejection and a refund of any premiums paid. 15 Cal.3d at 120, 539 P.2d at 439, 123 Cal.Rptr. at 656. In the instant case, Miller argues that the district court's ruling undercuts the holdings of *Ransom* and *Smith.* She contends that where, as here, an uninsurable condition first manifests itself during the 60-day risk-evaluation period, an insurer should not be allowed to deny an application based on

that condition. Otherwise, an insurer will "make a deathbed race" to reject a proposed insured's application whenever it receives knowledge during the risk-evaluation period that the insured was involved in a serious accident or contracted a serious illness.

■ There is no question that the district court correctly applied the rules of *Ransom* and *Smith* in finding that Fred Miller took all of the steps required for temporary coverage to arise and that Republic did everything required to terminate such coverage, *assuming that Republic had a right to terminate.* The court erred, however, in construing the receipt given to Fred Miller to allow Republic to determine that Miller was uninsurable as of any time *after* December 4, 1977. This error warrants reversal of the court's order granting summary judgment for Republic.

■ In the district court's view, Republic was free to deny Fred Miller's application if within 60 days of applying Miller became uninsurable for any reason. We hold, however, that the receipt given to Miller on December 4, 1977, must be construed in favor of the insured only to give Republic additional time to determine insurability *as of the effective date of the policy*—i.e., December 4.[3]

1. In *Ransom,* as in the instant case, the proposed insured was examined by a doctor selected by the insurer and submitted the first full premium payment with his written application for insurance. After receiving the doctor's report, the insurer requested that Ransom undergo further physical examination, but he was killed in an automobile accident before this was arranged. The issue, as framed by the California Supreme Court, was "whether a contract of insurance arose immediately upon receipt by defendant of the completed application with the premium payment subject to the right of defendant to terminate the agreement if it subsequently concluded that Ransom was not acceptable." 43 Cal.2d at 423, 274 P.2d at 634–35. The court held that there was immediate "temporary" coverage upon receipt of the application and premium payment.

2. In *Smith,* proposed insured Smith submitted an application and premium payment for life insurance, mortgage-security protection, accidental death benefits, and premium waiver in

the event of total disability. Within several weeks, the insurer issued Smith a policy that modified the coverage applied for by eliminating the accidental death benefits and premium waiver and by increasing the monthly premium. When Smith refused to sign an amended application or pay the increased premium, he was told that the company would not issue the policy applied for and that the premium already paid would be refunded. Smith died in an automobile accident the next day. The California Supreme Court held that the temporary insurance coverage that arose upon receipt of the application and payment of the premium under the rule established in *Ransom* was not terminated until the applicant received both notice of rejection and a refund of any premiums paid. 15 Cal.3d at 120, 539 P.2d at 439–40, 123 Cal.Rptr. at 655–6.

3. Under California law, ambiguities in an insurance contract are to be construed most strongly in favor of the insured. *Smith,* 15 Cal.3d at 120, 539 P.2d at 440, 123 Cal.Rptr. at 656;

This interpretation is consistent with the assigned purpose of issuing such receipts to life insurance applicants:

> [A] practice has arisen of issuing conditional binders if the first premium is paid at the time of application. . . . There is a variety of wording in such instruments . . . . What the companies generally seek to do is to make interim coverage depend upon their approval of the application, *or a finding that the applicant was insurable at the time the application is made.* They argue that this protects the applicant if his condition should deteriorate after that moment.

12A Appleman, *Insurance Law & Practice* § 7237, at 188–89 (1981) (emphasis added). Moreover, while the language of each life insurance policy is different in some respects, virtually every case construing a receipt similar to the one given to Fred Miller speaks of insurability as of the policy's effective date. *See, e.g., Rivota v. Fidelity & Guaranty Co.,* 497 F.2d 1225, 1227 (7th Cir.1974); *Scheinman v. Phoenix Mutual Life Insurance Co.,* 409 F.2d 999, 1000 (7th Cir.1969); *Damm v. National Insurance Co. of America,* 200 N.W.2d 616, 620 (N.D.1972).

This interpretation also comports with the "reasonable expectations" of an applicant who receives a receipt, pays the first premium, and submits to the insurer's medical examination. In *Smith,* the California Supreme Court traced the development of a doctrine aimed at "effectuating the reasonable expectations of the ordinary applicant." 15 Cal.3d at 122, 539 P.2d at 441, 123 Cal.Rptr. at 657. The doctrine arose out of the recognition that insurance policies are "contracts of adhesion," i.e., standardized contracts prepared entirely by one party to the transaction for acceptance by the other. *Id.* at 122 n. 12, 539 P.2d at 441 n. 12, 123 Cal.Rptr. at 657 n. 12. In its present form, the "reasonable expectations" doctrine holds that "one who is given a receipt for

the first premium looks upon it as a receipt and is not bound to study it to discover conditions and limitations circumscribing its effectiveness." 12A Appleman, *Insurance Law & Practice* § 7243, at 247–51.

For example, in *Young v. Metropolitan Life Insurance Co.,* 272 Cal.App.2d 453, 77 Cal.Rptr. 382 (1969), cited approvingly by the California Supreme Court in *Smith,* Young applied for life insurance under a plan that provided double indemnity in the event of accidental death. The receipt given to Young when he paid the premium stated unambiguously that accidental death benefits would *not* be paid if the applicant died before the company approved the policy. Young died before his application was approved, and the insurer sought to limit its liability by the terms of the receipt. The court of appeal held that, even though company approval was clearly a condition precedent to the insurer's full liability, the company was liable to the full extent under the policy applied for unless it proved that the provisions limiting its liability were called to Young's attention or read by him. *Id.* at 461, 77 Cal.Rptr. at 387. The court reasoned that, "to the ordinary layman, payment of the insurance premium constitutes payment for immediate protection." *Id.*

In the instant case, Fred Miller signed the application, paid the full first year's premium, and was examined by a doctor selected by Republic. No further medical examinations were requested. The insurance agent represented to him that he was covered as of December 4 if he was insurable on that date. Under these facts, Fred Miller had a "reasonable expectation" that he was covered if he was insurable as of December 4.

Because we conclude that Republic had no right to terminate Fred Miller's insurance coverage unless it could prove

*Ransom,* 43 Cal.2d at 423, 274 P.2d at 635. An insurer is free to sell an insurance policy on condition that the policy may be cancelled based on medical facts learned subsequent to the date the first premium is paid and the

receipt is issued, but such a condition must be more explicit than the wording in the policy involved here and must actually come to the attention of the insured.

that Miller was uninsurable as of December 4, the order granting summary judgment must be reversed. The case is remanded for trial to determine whether Miller was insurable on December 4, 1977. In connection with this determination, we note that "insurability" cannot hinge solely on whether an uninsurable condition in fact exists on the effective date of the policy. If that were the case, an insurer could quickly reject every applicant who manifested an uninsurable condition during the risk-evaluation period, placing too heavy a burden upon the applicant to prove when the condition rendered him "uninsurable."[4] Therefore, an applicant should be considered "uninsurable" only if the medical examinations requested by the insurer disclosed that an uninsurable condition existed as of the effective date of the policy.

CONCLUSION

Based on the above analysis, the order granting summary judgment for Republic is reversed, and the case is remanded for trial.

MERRILL, Circuit Judge, dissenting:

I dissent and would affirm the District Court. I regard the holding of the majority and its rationale as contrary to the clear language of the December 4 receipt.

I agree that under the terms of that receipt the facts establishing uninsurability must have existed as of December 4. I disagree with the majority, however, on its contention that the question is not whether those facts then existed, but whether their existence on that date had been disclosed by the medical examination requested by Republic. I find nothing in the policy or the receipt to warrant such a conclusion. It is the *fact* of uninsurability as of December 4 that is crucial[1] and not some subjective assumption or expectation that may then have existed based on mistake of fact. The

company very clearly and explicitly reserved 60 days to ascertain the truth.

---

4. In this case, the affidavit of Marrinan, the Republic underwriter, states only that Miller was uninsurable "on whatever date he had the malignant brain tumor." Under these circumstances, it would be very difficult for a plaintiff to counter such lack of specificity.

1. No issue of fact exists as to that. Counsel for appellant at oral argument conceded what to me seems obvious: that the malignant brain tumor which was diagnosed on December 8 existed four days earlier.