884 F.2d 401
 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a
corporation, Plaintiff-Appellee,
v.
Nena KHOE, Joseph Khoe, Daniel Khoe, a minor, Michael Khoe,
a minor, and Michelle Khoe, a minor, Defendants-Appellants.
 No. 88-1709.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Feb. 16, 1989.*
Decided April 24, 1989.
As Amended on Denial of Rehearing and Rehearing En Banc Aug. 16, 1989.
 
 Barbara K. Ratliff, Los Angeles, Cal., for defendants-appellants.
 James P. Waggoner and Jeffrey T. Hammerschmidt, McCormick, Barstow, Sheppard, Wayte & Carruth, Fresno, Cal., for plaintiff-appellee.
 Before CHOY, SNEED and NOONAN, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 Nena Khoe, Joseph Khoe, Daniel Khoe, Michael Khoe, and Michelle Khoe (collectively referred to as "the Khoes") appeal from the district court's entry of summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm") in State Farm's action for a declaratory judgment. State Farm sought a declaration that no insurance contract was formed between State Farm and the Khoes when Nena Khoe signed an application for insurance which contained a clause saying coverage would not be effective until a policy was issued. Jurisdiction in the district court was based on diversity of citizenship. 28 U.S.C. Sec. 1332(a)(2). We have jurisdiction under 28 U.S.C. Sec. 1291 and we reverse.
 
 FACTS
 
 2
 In April 1986, Joseph Khoe contacted State Farm to inquire about obtaining health insurance. On April 21, 1986, State Farm agent Pamela Moring went to the Khoes's home to complete an application for health insurance for the Khoes. After Joseph Khoe told Mrs. Moring about his medical history, Mrs. Moring suggested that Joseph Khoe's wife Nena should be the primary insured and Joseph Khoe and the children should be on the application as dependents. The completed application listed Nena Khoe as the proposed insured. Joseph Khoe, Daniel Khoe, Michael Khoe, and Michelle Khoe were listed as dependents. Nena Khoe signed the application and gave Mrs. Moring a check for $3,475.86 to pay the first annual premium. State Farm cashed the premium check.
 
 
 3
 The application for health insurance contained a "conditional receipt" clause which stated that no insurance would be effective unless a policy was issued. The clause also stated that if a policy was issued, coverage would date back to the day the application was signed. Just below the conditional receipt clause were two signature lines, one for the agent and one for the proposed applicant, with a separate typed declaration above each signature line. The declaration above the line signed by Mrs. Moring stated "I have read and explained the Conditional Receipt to the Applicant." The declaration above the line signed by Nena Khoe stated "[t]he agent has read and explained this Conditional Receipt to me. I understand that I will not receive any insurance coverage for my money unless a policy is issued."[1]
 
 
 4
 The facts are disputed as to whether Mrs. Moring actually did read and explain the conditional receipt clause to Nena Khoe. Nena Khoe contends that she did not read the conditional receipt clause or any other part of the application before she signed the application.[2] The Khoes contend that Nena Khoe was not in the kitchen with Joseph Khoe and Mrs. Moring when the application was prepared. Mrs. Moring testified in a deposition that she read and explained the conditional receipt to those persons present in the kitchen at the time the application was taken, and that Joseph Khoe and Nena Khoe were both present in the kitchen at that time.
 
 
 5
 Joseph Khoe contends that he asked why the premium had to be paid right away and Mrs. Moring responded that if the Khoes paid the premium, they would receive immediate coverage, beginning that day. Mrs. Moring testified that Joseph Khoe attempted to get her to commit that he was fully covered as of the date of the application but she explained to him that there was no coverage at that point unless a policy was later issued and that there would be no coverage at all if a policy was not issued.
 
 
 6
 Joseph Khoe was hospitalized from June 2, 1986, until July 6, 1986, for injuries he sustained in an accident on May 18, 1986. State Farm alleges that an agent telephoned the Khoes on or about May 12, 1986, and again on May 29, 1986, to inform them that Joseph Khoe's medical history made him noninsurable. On June 23, State Farm sent a letter to Nena Khoe explaining a modified policy offer which would delete coverage for Joseph Khoe and amend coverage for one of the children.
 
 
 7
 On July 15, 1986, a State Farm agent delivered the modified policy offer to the Khoes. Nena Khoe signed the amendment modifying coverage for one of the children. However, the Khoes refused to sign the amendment deleting Joseph Khoe from coverage unless State Farm would agree to pay for his hospitalization expenses. The State Farm agent left a refund check in the amount of $2,127.10, which represented the portion of the premium for the coverage applied for but not offered in the modified policy offer. The agent explained to the Khoes that if the amendment deleting Joseph Khoe's coverage was not signed, the entire application would be processed as "not taken."
 
 
 8
 On July 26, State Farm processed the modified policy offer as "not taken." State Farm sent Nena Khoe another refund check for $1,348.76, the remaining balance of the premium originally paid. Joseph Khoe returned both refund checks to State Farm, accompanied by letters dated July 31, 1986, and August 5, 1986. Both letters accused State Farm of fraudulent practices.
 
 
 9
 On July 18, 1986, Joseph Khoe submitted a claim for approximately $22,000 for costs related to his hospitalization. In July and again in August, Joseph Khoe submitted claims for Michael Khoe, Daniel Khoe, and Nena Khoe for illnesses. State Farm has refused to pay any claims.
 
 
 10
 On August 26, State Farm sent a letter to Joseph Khoe explaining that neither he nor Nena Khoe ever had a health policy with State Farm and that they did not have any coverage as a result of the April application. State Farm enclosed a new refund check for the total premium amount. On September 9, 1986, State Farm received another letter from Joseph Khoe accusing the company of fraudulent practices and returning the refund check. State Farm made one more attempt to send the refund check to the Khoes but Joseph Khoe returned it to the company in October 1986.
 
 
 11
 On November 14, 1986, State Farm filed its complaint for declaratory relief and deposited the amount of the refund check with the district court. The Khoes filed a counterclaim alleging breach of contract, breach of statutory duties, fraud, and negligent misrepresentation. The parties then filed cross motions for summary judgment. On February 4, 1988, the district court entered summary judgment for State Farm, holding that no contract of temporary insurance arose under California law because Nena Khoe had signed the conditional receipt which unambiguously stated that coverage would not be effective until a policy was issued. The Khoes filed this timely appeal.
 
 STANDARD OF REVIEW
 
 12
 The district court's grant of summary judgment is reviewed de novo. Bonner v. Lewis, 857 F.2d 559, 561 (9th Cir.1988). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Lundy v. Union Carbide Corp., 695 F.2d 394, 396 (9th Cir.1982), cert. denied, 474 U.S. 848, 106 S.Ct. 143, 88 L.Ed.2d 118 (1985). There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the opponent of the motion. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In ruling on a summary judgment motion, neither this court nor the district court is permitted to weigh the evidence put forth by the parties or to evaluate the credibility of witnesses. Pepper & Tanner, Inc. v. Shamrock Broadcasting, Inc., 563 F.2d 391, 393 (9th Cir.1977).
 
 DISCUSSION
 
 13
 California's substantive insurance law governs in this diversity case. James B. Lansing Sound, Inc. v. National Union Fire Ins. Co., 801 F.2d 1560, 1561 (9th Cir.1986). Under California law, a contract of temporary insurance may arise from completion of an application for insurance and payment of the first premium, if the language of the application would lead an ordinary layperson to conclude that coverage was immediate. Smith v. Westland Life Ins. Co., 15 Cal.3d 111, 123 Cal.Rptr. 649, 539 P.2d 433 (1975); Thompson v. Occidental Life Ins. Co., 9 Cal.3d 904, 109 Cal.Rptr. 473, 513 P.2d 353 (1973); Ransom v. Penn Mutual Life Ins. Co., 43 Cal.2d 420, 274 P.2d 633 (1954). In granting summary judgment for State Farm, the district court ruled that the terms of the conditional receipt clause here clearly and unambiguously indicated that there would be no coverage until a policy was issued. The court did not discuss whether Mrs. Moring had read and explained the conditional receipt to Nena Khoe or whether Mrs. Moring had made any oral representation that the Khoes would receive immediate coverage if they paid the premium. We review the district court's interpretation of state law and of the insurance policy provisions de novo. State Farm Fire and Cas. Co. v. Estate of Jenner, 856 F.2d 1359, 1362 (9th Cir.1988); Kemmis v. McGoldrick, 767 F.2d 594, 597 (9th Cir.1985).
 
 I.
 
 14
 Existence of a Contract for Temporary Insurance
 
 
 15
 The California Supreme Court first determined that a contract of insurance arose upon the receipt by the insurance company of a completed application and a premium payment in Ransom v. Penn Mutual Life Ins. Co., 43 Cal.2d 420, 274 P.2d 633, 635 (1954). In that case, the relevant language in the insurance application appeared to give the applicant a choice of either paying his first premium immediately or not paying the premium until a policy was issued. If the applicant paid immediately, insurance would be in force from the application date; otherwise, no insurance would be in force until a policy was issued.[3] Id. 274 P.2d at 635-36. The court stated that "[t]he understanding of an ordinary person is the standard which must be used in construing the contract, and such a person upon reading the application would believe that he would secure the benefit of immediate coverage by paying the premium in advance of the delivery of the policy." Id. 274 P.2d at 636.
 
 
 16
 Subsequently, in Thompson v. Occidental Life Ins. Co., 9 Cal.3d 904, 109 Cal.Rptr. 473, 513 P.2d 353 (1973), the California Supreme Court clarified that Ransom did not set down a rule applicable to all insurance applications. An insurance company may impose conditions precedent to the effectiveness of insurance coverage despite advance payment of the first premium. However, in determining whether the application at issue creates a contract for insurance, "the California courts make 'no attempt ... to draw fine distinctions from the various phraseology used in the numerous policies.' " Id. 109 Cal.Rptr. at 477, 513 P.2d 353 (quoting Metropolitan Life Ins. Co. v. Grant, 268 F.2d 307, 309 (9th Cir.1959)). A conditional receipt clause which eliminates a contract for temporary insurance "must be stated in conspicuous, unambiguous and unequivocal language which an ordinary layman can understand." Id.; see also Young v. Metropolitan Life Ins. Co., 272 Cal.App.2d 453, 77 Cal.Rptr. 382, 385 (1969) (Ransom permits insurers to avoid liability under unissued insurance policy when it collects first premium upon receiving application but insurer must limit liability in plain language).
 
 
 17
 In this case, the language used by the insurance company was in fact clear and unambiguous. The conditional receipt clause provided, in full:
 
 
 18
 CONDITIONAL RECEIPT--Leave Original Attached to Application (Detach Copy and Give to Applicant) Received from Joseph & Nena this 21 day of April, 1986 an application for a health insurance policy in the State Farm Mutual Automobile Insurance Company and cash or check for 3475.86 dollars. It is agreed that no insurance shall be effective unless a policy is issued. However, if the Company is satisfied, after investigation and such examination, if any, as it may require, that the proposed insured and any named dependents were insurable in accordance with the Company's rules and practices of selection for the insurance applied for at the time the application was signed, the policy will be dated and effective according to its terms at 12:01 A.M. the day the application was dated. If the application is declined, or if the policy is issued other than as applied for and is not accepted by the applicant, the Company agrees to refund the above amount to the applicant.
 
 
 19
 The second sentence of the conditional receipt clause unambiguously states that no insurance shall be effective unless a policy is issued. The third sentence of the clause, stating that coverage would date back if the applicant was deemed insurable and a policy was issued, is not ambiguous but might be confusing to the ordinary layperson. However, just below the clause and above the signature line signed by Nena Khoe, the application states, "I understand that I will not receive any insurance coverage for my money unless a policy is issued." This last sentence clearly and simply reinforces that payment of the premium does not necessarily result in immediate coverage.
 
 
 20
 To bolster their argument that a contract of temporary insurance arose here, the Khoes attempt to rely on the general principle that a court interpreting an insurance contract must resolve ambiguities in policy language in favor of the insured to protect the insured's reasonable expectation of coverage. Producers Dairy Delivery Co. v. Sentry Ins. Co., 41 Cal.3d 903, 226 Cal.Rptr. 558, 562, 718 P.2d 920, 924 (1986). In the area of temporary insurance contracts, this general principle of insurance contract interpretation has even greater force. As the court pointed out in Smith, the ordinary person who pays the full premium at the time he applies for insurance has a very strong expectation that payment will result in immediate protection. 123 Cal.Rptr. at 657, 539 P.2d at 441. Because of this very strong expectation, "any ambiguous circumstance ... must be resolved against the insurance company and in the applicant's favor." Koorstad v. Washington Nat'l Ins. Co., 257 Cal.App.2d 399, 64 Cal.Rptr. 882, 886 (1967).
 
 
 21
 However, the doctrine of reasonable expectation of coverage only operates when there is an ambiguity. Wolf Machinery Co. v. Ins. Co. of North America, 133 Cal.App.3d 324, 183 Cal.Rptr. 695, 697 (1982). In determining whether there is an ambiguity, the court must read words "in their ordinary sense, and any ambiguity cannot be based on a strained interpretation of the policy language." Producers Dairy, 226 Cal.Rptr. at 563, 718 P.2d at 925; see also Poland v. Martin, 761 F.2d 546, 548 (9th Cir.1985) (applying California law, "[a] court should not strain for interpretations to create ambiguities where none exist."). The three major California Supreme Court cases in this area, Ransom, Thompson, and Smith, involved conditional receipt clauses which were definitely ambiguous to both the court and the layperson. In this case, however, even the possibly confusing third sentence of the clause is free from actual ambiguity and the remainder of the clause is written in language simple enough for a layperson to understand. The very simple language of the second sentence in the main body of the clause and the statement above the signature line is sufficient to dispel any confusion that might result from a layperson's reading of the third sentence in the main body of the clause. Thus, we conclude that State Farm did unambiguously and unequivocally condition coverage on issuance of a policy and that the language of the clause would not give rise to a contract of temporary insurance.
 
 II.
 
 22
 Effect of Disputed Facts Regarding Agent Moring's
 
 
 23
 Explanation of the Conditional Receipt Clause
 
 
 24
 The Khoes contend that the district court erred because the court did not consider the disputed factual issues surrounding the agent's explanation of the conditional receipt clause. The Khoes allege that Mrs. Moring told Joseph Khoe he would have immediate coverage. They also allege that Nena Khoe, the proposed insured, was not in the room when Mrs. Moring explained the meaning of the clause and did not read the clause before signing the application. On the other hand, Mrs. Moring testified that she did explain that the clause meant no immediate coverage would be provided. Further, she testified that Nena Khoe was present when the explanation was given.
 
 
 25
 In Young v. Metropolitan Life Ins. Co., 272 Cal.App.2d 453, 77 Cal.Rptr. 382, 385 (1969), a California Court of Appeal imposed an obligation on the insurer to call an unambiguous conditional receipt clause to the insured's attention and explain it to the insured. The court determined that a conditional receipt clause limiting coverage in the interim period to a set amount was unambiguous. Thus, the insurer would have been liable for coverage only up to the stated amount under the terms of the clause alone. Id. 77 Cal.Rptr. at 385. However, the court held that because the insurance company had not shown either that its agent had explained the clause to the insured or that the insured had read and understood the clause, the insured was entitled to the full coverage he had expected to receive under the policy. Id. at 387.
 
 
 26
 The court in Young reasoned that insurance contracts are contracts of adhesion between unequally situated parties. As a general rule, the insurer is required to draft its adhesion contract in unambiguous terms and to call to the insured's attention any provisions and conditions that would exclude or limit coverage. Id. This duty to call attention to such provisions is even stronger in the conditional receipt context because "the very acceptance of an advance premium by the carrier tends naturally toward an understanding of immediate coverage though it be temporary and terminable." Id.
 
 
 27
 State Farm cites State Farm Fire & Cas. Co. v. Clendening, 150 Cal.App.3d 40, 197 Cal.Rptr. 377, 378 (1983), to argue that an unambiguous conditional receipt clause need not be called to the insured's attention. Clendening involved an exclusionary clause in a homeowner's insurance policy which excluded coverage for personal injury claims of one spouse against the other. The court determined that because the clause was conspicuous and unambiguous, the clause did not need to be called to the attention of the insured.
 
 
 28
 The decision in Clendening is against the general weight of authority. In the conditional receipt context, California recognizes that "the layman's expectation of complete and immediate coverage is so strong that if the insurer wishes to avoid its obligation of providing such protection it must not only use clear and unequivocal language ..., but must also call such [limiting and conditional language] to the attention of the applicant." Smith, 123 Cal.Rptr. at 657, 539 P.2d 441 (footnote omitted). The result in Young is in keeping with the rule that even an unambiguous conditional receipt clause must be called to the attention of the insured.
 
 
 29
 State Farm also argues that the Khoes had a duty to read the insurance application and are charged with knowledge of its terms even if they did not read it. Thus, State Farm contends that the Khoes are charged with knowledge that there was no insurance coverage until a policy was issued.
 
 
 30
 This contention is without merit. Although there is a general rule in California that the insured has a duty to read his policy and is charged with knowledge of its terms, Hackethal v. National Cas. Co., 189 Cal.App.3d 1102, 234 Cal.Rptr. 853, 858 (1987), the duty is somewhat relaxed in the insurance context. Fields v. Blue Shield of California, 163 Cal.App.3d 570, 209 Cal.Rptr. 781, 785 (1985) (duty to read insufficient to bind party to unusual or unfair language unless it is brought to attention of party and explained); Laing v. Occidental Life Ins. Co., 244 Cal.App.2d 811, 53 Cal.Rptr. 681, 686 (1966) (presumption that persons are familiar with terms of written contracts is not strictly applied to insurance contracts). Because an insured has a heightened expectation that coverage will be immediate in the conditional receipt cases, Young eliminates the duty to read and imposes an affirmative duty on the insurer to show either that the insured has read and understood a conditional receipt clause or that the clause was read and explained to the insured by the agent.
 
 
 31
 In this case, there is a triable issue of fact as to whether the clause actually was called to Nena Khoe's attention and adequately explained to her as the proposed insured. It appears that Mrs. Moring discussed the clause with Joseph Khoe, but the parties offer conflicting testimony about whether Mrs. Moring told Joseph Khoe he would have immediate coverage or no coverage until the determination of insurability. Thus, we remand the case to the district court for a determination whether the clause was called to Nena Khoe's attention and correctly explained to her. If the clause was not called to Nena Khoe's attention, then a contract of temporary insurance did arise in this case.
 
 III.
 
 32
 Termination of the Temporary Insurance Contract
 
 
 33
 If the district court determines that a contract of temporary insurance did arise because no explanation of the conditional receipt clause was made or the explanation was inadequate, the insurance company had a right to terminate the contract when it subsequently determined that Joseph Khoe was not insurable. To terminate a temporary insurance contract, the insurer must notify the insured of the rejection of his policy and refund the premium payment to the insured. Smith, 123 Cal.Rptr. at 656, 539 P.2d at 440.
 
 
 34
 State Farm alleges that it telephoned the Khoes in May to inform them that Joseph was not insurable. However, this telephone notification is insufficient, under Smith, to terminate the contract. The earliest possible date the contract could have been terminated as to Joseph Khoe is July 15, 1986, when State Farm gave a modified policy offer to the Khoes which excluded Joseph from coverage and refunded the amount of the premium attributable to that portion of the coverage. As to the entire family, the contract was terminated when Nena Khoe received a letter notifying her that the modified policy offer was processed as not taken and returning the refund check for the remainder of the premium. If the district court determines on remand that a contract for temporary insurance did exist, the Khoes may recover for all claims up until the date of termination of the contract.
 
 
 35
 Finally, we note that State Farm's complaint also alleged that the Khoes had made misrepresentations or had failed to disclose in their application certain facts regarding their medical history and the fact that they had at least twenty-two other health insurance policies. On the basis of these misrepresentations, State Farm sought rescission of any contract that might have arisen between State Farm and the Khoes. Since the district court originally held that no contract of temporary insurance arose, it never addressed the merits of the rescission claim. The rescission claim was not raised on appeal but State Farm is free to raise the claim again in the district court. If rescission is warranted, State Farm would have no liability to the Khoes.
 
 CONCLUSION
 
 36
 We hold that the conditional receipt clause is unambiguous and thus the language of the clause would not give rise to a contract of temporary insurance. Triable issues of fact exist, however, as to whether the clause adequately was read and explained to the Khoes. If the clause was not explained adequately to Nena Khoe, a contract for temporary insurance did arise on April 21, 1986. Thus, we remand to the district court for a determination whether the clause was in fact explained to the insured.
 
 
 37
 If a contract did arise, the contract was terminated as to Joseph Khoe on July 15, 1986, and as to the rest of the Khoes in late July. In addition, State Farm is permitted to show on remand that any contract which did arise should be rescinded. If the district court determines that a contract did arise and should not be rescinded, the court should determine the exact termination date as to the rest of the Khoes and the extent of State Farm's liability to Joseph Khoe and to the rest of the Khoes prior to the termination dates.
 
 
 38
 REVERSED AND REMANDED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 Above the conditional receipt clause was a separate signature line for the application as a whole, also signed by Nena Khoe. Preceding this signature line was a paragraph which read, in part, "I represent that my answers and statements in this application are true and complete to the best of my knowledge and belief and agree that ... (2) no insurance will be effective unless a policy has been issued."
 
 
 [2]
 Nena Khoe is of Filipino descent and English is not her first language. Joseph Khoe is of Chinese descent. He has had five years of formal education and does not read or write English fluently
 
 
 [3]
 The clause in Ransom read
 [i]f the first premium is paid in full in exchange for the attached receipt signed by the Company's agent when this application is signed the insurance shall be in force, subject to the terms and conditions of the policy applied for ... provided the Company shall be satisfied that the Proposed Insured was at that date acceptable ... but that if such premium is not so paid or if the Company is not satisfied as to such acceptability, no insurance shall be in force until both the first premium is paid in full and the policy is delivered....